ACCEPTED
03-15-00064-CV
4445641
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/10/2015 4:45:02 PM
JEFFREY D. KYLE
CLERK

## CAUSE NO. 03-15-00064-CV

In the Court of Appeals
For the Third Court of Appeals District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/10/2015 4:45:02 PM
JEFFREY D. KYLE
Clerk

ELITE AUTO BODY LLC, d/b/a PRECISION AUTO BODY, REY R. HERNANDEZ, YESICA DIAZ, AND DAVID DAMIAN,
*Appellants,*

v.

AUTOCRAFT BODYWERKS, INC., now known as WASSON ROAD VENTURES, INC., d/b/a AUTOCRAFT BODYWERKS,
*Appellee.*

Expedited Appeal from the 353rd Judicial District Court,
Travis County, Texas, the Hon. Tim Sulak, Presiding

## APPELLANTS' BRIEF

Rick Harrison
Texas Bar No. 09120000
rharrison@fbhh.com
FRITZ, BYRNE, HEAD & HARRISON, PLLC
98 San Jacinto Boulevard, Suite 2000
Austin, Texas 78701
Telephone: (512) 476-2020
Telecopier: (512) 477-5267

### COUNSEL FOR APPELLANTS

### ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellant lists the following parties affected by this appeal, and their respective counsel:

| APPELLANTS | APPELLEE |
|---|---|
| Elite Auto Body, LLC d/b/a Precision Auto Body, Rey R. Hernandez, Yesica Diaz, and David Damian | Autocraft Bodywerks, Inc., now known as Wasson Road Ventures, Inc., d/b/a Autocraft Bodywerks |
| Trial and Appellate Counsel:<br><br>Rick Harrison<br>Texas Bar No. 09120000<br>rharrison@fbhh.com<br>S. King<br>Texas Bar No. 24067708<br>aking@fbhh.com<br>Dale L. Roberts<br>Texas Bar No. 24001123<br>droberts@fbhh.com<br>**FRITZ, BYRNE, HEAD & HARRISON, PLLC**<br>98 San Jacinto Blvd., Suite 2000<br>Austin, Texas 78701<br>Telephone: (512) 476-2020<br>Facsimile: (512) 477-5267 | Trial and Appellate Counsel:<br><br>James Ruiz<br>Texas Bar No. 17385860<br>jruiz@winstead.com<br>Jacylyn G. Austein<br>Texas Bar No. 24069760<br>Jaustein@winstead.com<br>WINSTEAD, P.C.<br>401 Congress Avenue, Suite 2100<br>Austin, Texas 78701<br>Telephone: (512) 370-2818<br>Facsimile: (512) 370-2850 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................... i

TABLE OF CONTENTS ............................................................................. ii

I.   STATEMENT OF THE CASE ..............................................................1

II.  STATEMENT REGARDING ORAL ARGUMENT ...............................2

III. ISSUES PRESENTED ........................................................................2

IV.  STATEMENT OF FACTS ...................................................................2

V.   SUMMARY OF THE ARGUMENT .....................................................5

VI.  ARGUMENT ....................................................................................7

   A.  **The TCPA Applies to Autocraft's Claims Against the Precision Parties** .....................................................................................**7**

     1.  **The scope of the TCPA and the rights it protects are broad** .................7

     2.  **Autocraft's claims are in response to, or relate to, the Precision Parties' exercise of their freedoms of association and free speech** .......10

   B.  **Because Autocraft wholly failed to meet its evidentiary burden, the trial court was required to dismiss Autocraft's claims**. ...........................**12**

     1.  **Conclusory statements in affidavits do not constitute "clear and specific evidence."** .....................................................................12

     2.  **Autocraft failed to submit prima facie case for each essential element of its claims** ......................................................................14

   C.  **The Precision Parties are entitled to an award of their reasonable attorneys' fees and expenses** ...............................................................**16**

   D.  **The trial court erred by refusing to hear live testimony at the hearing on Motion to Dismiss** .................................................................**17**

CONCLUSION AND PRAYER ...................................................................18

CERTIFICATE OF SERVICE ....................................................................20

CERTIFICATE OF COMPLIANCE .............................................................21

# TABLE OF AUTHORITIES

**CASES**

*Beck v. Law Offices of Edwin J. ("Ted") Terry, Jr., P.C.*, 284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) ...................................................................14

*Campbell v. Campbell*, Cause No. 03-07-00672-CV, 2010 WL 2477782 (Tex. App.—Austin June 18, 2010, no pet.)............................................................13

*Combined Law Enforcement Assocs. of Texas v. Sheffield*, Cause No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.—Austin, January 31, 2014, pet. filed) ................................................................................................. 8, 9, 10

*Rehak Creative Svcs., Inc. v. Witt*, 404 S.W.3d 716 (Tex. App. – Houston [14th Dist.] 2013, pet. denied) ........................................................... 8, 12, 13, 14

*Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) ...................................................................................13

*Sprayberry v. Siesta MHC Income Partners, L.P.*, Cause No. 03-08-00649-CV, 2010 WL 1404598 (Tex. App.—Austin April 8, 2010, no pet.)...................13

**STATUTES**

TEX. CIV. PRAC. & REM. CODE § 27.001 .................................................................1, 6

TEX. CIV. PRAC. & REM. CODE § 27.001(2) ...............................................................9

TEX. CIV. PRAC. & REM. CODE § 27.001(3) ...............................................................9

TEX. CIV. PRAC. & REM. CODE § 27.001(7)(e)............................................................9

TEX. CIV. PRAC. & REM. CODE § 27.002 ..............................................................5, 8

TEX. CIV. PRAC. & REM CODE § 27.003(a) ...............................................................8

TEX. CIV. PRAC. & REM. CODE § 27.005(b) ...............................................................6

TEX. CIV. PRAC. & REM. CODE § 27.005(c)...................................................... 6, 8, 12

TEX. CIV. PRAC. & REM. CODE § 27.006 ................................................................18

TEX. CIV. PRAC. & REM. CODE § 27.009 ................................................................16

TEX. CIV. PRAC. & REM. CODE § 27.011(b) .............................................................9

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) .......................................................1

TEX. CIV. PRAC & REM. CODE § 134A.002 ...................................................... 14, 16

TEX. CIV. PRAC. & REM. CODE § 134A.004 ...........................................................14

# I.    STATEMENT OF THE CASE

In response to Appellants' desire to pursue their common interest in operating a competing business, Appellee filed suit against Appellants seeking injunctive relief and damages. **[CR 3-11]**    In particular, Appellee claims that Appellants have misappropriated alleged trade secrets as Appellants engage in a competitive business in the marketplace.   These claims are a veiled attempt to thwart Appellants' exercise of association, both with regard to the internal management of their business as well as with recruiting qualified labor to their company.   Appellants filed a Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code (the "Motion to Dismiss"), because Appellee's claims are in response to, or are at least related to, Appellants' exercise of their freedom of association and speech as defined in the Texas Citizens Participation Act ("TCPA").   *See* TEX. CIV. PRAC. & REM. CODE § 27.001, *et seq.* **[CR 18-31]**   The trial court conducted a hearing on the Motion to Dismiss on January 22, 2015, and entered an order denying the Motion to Dismiss on January 23, 2015.   **[CR 49]**   Appellants filed this expedited appeal pursuant to TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) on January 28, 2015.   **[CR 50-51]**

## II.     STATEMENT REGARDING ORAL ARGUMENT

This appeal arises from a relatively new statute that has been a matter of significant debate among the appellate courts as to its scope and application. The trial court's decision regarding the scope of the statute's coverage conflicts with decisions made by this Court. Accordingly, Appellants believe that oral argument would likely be helpful in this matter and therefore respectfully requests that oral argument be granted.

## III.     ISSUES PRESENTED

1.     Did the trial court commit reversible error when it denied the Motion to Dismiss on the grounds that the TCPA did not apply to Appellee's claims despite evidence showing that such claims were in response to, or related to, Appellants' exercise of their rights of free association?

2.     In the absence of clear and specific evidence establishing a prima facie case for each element of Appellee's claims, was it error for the trial court to deny the Motion to Dismiss and refuse to award the Precision Parties' their attorneys' fees and expenses?

3.     Was the trial court correct to refuse live testimony at the hearing for the Motion to Dismiss where the statute does not preclude such evidence?

## IV.     STATEMENT OF FACTS

Appellee, Autocraft Bodywerks ("Autocraft"), is an automobile body repair business in Austin. **[CR 4]** Until recently, John Borek was Autocraft's owner and general manager. Borek Affidavit, ¶ 1 **[CR 41]** By multiple accounts, Borek was

a harsh manager whose abusive behavior eventually led to key employees leaving the company to form a competing business. Hernandez Declaration, ¶ 4 **[CR 26]**; Damian Declaration, ¶¶ 3, 5 **[CR 29-30]** Two Appellants, Rey R. Hernandez ("Hernandez") and David Damian ("Damian"), are former Autocraft employees. Hernandez Declaration, ¶ 4 **[CR 26]**; Damian Declaration, ¶¶ 3-5 **[CR 29-30]**

Before working for Autocraft, Hernandez gained extensive expertise performing various types of auto bodywork for over nineteen years including several years at a BMW assembly plant in California. Hernandez Declaration, ¶ 2 **[CR 25]** After coming to Austin in 2008, Hernandez worked for Autocraft for approximately one year. Hernandez Declaration, ¶ 4 **[CR 26]** Ultimately, Hernandez resigned from Autocraft due to the hostile work environment created by Borek. Hernandez Declaration, ¶ 6 **[CR 26]** During his time at Autocraft, Hernandez was never asked to sign a non-competition, non-solicitation or non-disclosure agreement. Hernandez Declaration, ¶ 5 **[CR 26]**

After leaving Autocraft, Hernandez began operating Precision Automotive ("Precision") in 2009. Over the years, Precision developed into a successful auto body repair business under Hernandez's leadership. Hernandez Declaration, ¶¶ 6-7 **[CR 26-27]** Through his experience in the auto body repair business, Hernandez became aware of the general business practices employed by such repair shops

including the use of forms, checklists and Technical Service Bulletins. Hernandez Declaration, ¶¶ 3,5 **[CR 25, 27]**

Damian likewise has many years of experience in the auto body repair industry including several years working for Autocraft as its Production Manager. Before working for Autocraft, Damian worked for many years in his father's auto body repair shop. Damian Declaration, ¶¶ 2-3 **[CR 29]** During that time, Damian became aware of the common business practice of using forms and checklists such as those used by Autocraft on which Autocraft's alleged trade secret and confidential information claims are based. Damian Declaration, ¶¶ 2,4,6 **[CR 29-30]** In March, 2014 after several years at Autocraft, David Damian left Autocraft's employment and joined Precision. Damian Declaration, ¶¶ 3-5 **[CR 29-30]** During his time at Autocraft, Damian was never asked to sign a non-competition, non-solicitation or non-disclosure agreement. Damian Declaration, ¶ 4 **[CR 30]** Likewise, he was not told that any of the business practices employed by Autocraft (which were not unique or secret in the industry) were confidential or trade secrets.

Not long after Damian joined Precision, Joyce Garcia, Autocraft's office manager, followed. The employees at Precision enjoy a healthy and productive working environment in contrast to the stressful and often hostile environment created by Autocraft's former manager, Borek. Damian Declaration, ¶¶ 3-5 **[CR**

**29-30]** Hereafter, the Appellants Elite Auto Body, LLC d/b/a Precision Auto, Rey R. Hernandez, Yesica Diaz, and David Damian are referred to collectively as the "Precision Parties." Autocraft's claims have impacted their communications among the Precision Parties regarding common business practices that Autocraft now claims constitute proprietary information as well as communications with potential customers and potential employees that are currently employed by Autocraft. Hernandez Declaration, ¶¶ 8-9 **[CR 27]**; Damian Declaration, ¶ 6 **[CR 30]**

## V.    SUMMARY OF THE ARGUMENT

The TCPA must be broadly construed to protect parties' rights of association and free speech. TEX. CIV. PRAC. & REM. CODE § 27.002. The trial court in this case failed to follow that admonition. The trial court narrowly construed the TCPA and incorrectly concluded that the statute did not apply to Autocraft's claims. Because the TCPA actually applies to Autocraft's claims, the trial court incorrectly failed to dismiss the action in the absence of clear and specific evidence of a prima facie case for each element of Autocraft's claims.

This action was clearly instituted in response to the Precision Parties' exercise of their rights to freedom of association and free speech under the TCPA. Specifically, Autocraft's claims target the Precision Parties' communications in

pursuit of their common interest of operating a competitive automobile body repair business. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2-3) (defining the rights of association and free speech under the TCPA). Although cast as trade secret misappropriation, Autocraft's claims are a thinly veiled attempt to interfere with the Precision Parties' lawful business competition by preventing them from communicating non-proprietary business practices and communicating with Autocraft's employees. Notably, there is zero evidence of business information that arguably constitutes trade secret or confidential information. The Precision Parties clearly met their burden and established that Autocraft's claims "relate to, or [are] in response to" the Precision Parties' exercise of their rights of association and free speech. TEX. CIV. PRAC. & REM. CODE § 27.005(b).

Because the TCPA applies to Autocraft's claims, Autocraft bore the burden of "establish[ing] by clear and specific evidence a prima facie case for each essential element" of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c). Autocraft wholly failed to meet that burden. Instead of providing clear and specific evidence, Autocraft submitted a conclusory affidavit that primarily recited allegations from its pleadings. In the absence of clear and specific evidence of each element of Autocraft's claims, the trial court was required to dismiss this

action and award the Precision Parties their reasonable attorneys' fees and expenses.

## VI.   ARGUMENT

### A.   The TCPA Applies to Autocraft's Claims Against the Precision Parties

Autocraft's claims are in response to, or at least relate to, the Precision Parties' exercise of their rights of association and free speech.  Those rights, as defined by the TCPA, have broad reach and include the Precision Parties' communications in pursuit of their common interest – the Precision Parties' competing business – and regarding the Precision Parties provision of services in the marketplace.  Because Autocraft's claims relate to those communications, the TCPA applies.

#### 1.   The scope of the TCPA and the rights it protects are broad.

Before the enactment of Chapter 27 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, there was no means to avoid the significant expense required to defend baseless claims intended to stifle people's rights to freely associate and communicate.  As enacted, the statute's purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law, and, at the same time protect the rights of a person to file meritorious lawsuits for

demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. The statute accomplishes that purpose by requiring Autocraft to produce clear and specific evidence of a prima facie case for each essential element of Autocraft's claims covered by the statute. *Id.* § 27.005(c).

Chapter 27 applies to a broad swath of actions to protect people's rights of association and free speech. The statute applies to any legal action that "is based on, *relates to,* or is in response to a party's exercise of the right of free speech . . . or right of association." *Id.* § 27.003(a) (emphasis added). Thus, the statute applies to *any* claim that merely *relates to* a party's exercise of their freedoms of association and free speech. *See Rehak Creative Svcs., Inc. v. Witt*, 404 S.W.3d 716, 733 (Tex. App. – Houston [14th Dist.] 2013, pet. denied) (holding that conversion and misappropriation claims were covered by the TCPA where they had "a connection to" protected communications).

The rights covered by the TCPA are broader than the protections provided by the Constitution for those same rights. *See Combined Law Enforcement Assocs. of Texas v. Sheffield*, Cause No. 03-13-00105-CV, 2014 WL 411672, at *11-12 (Tex. App.—Austin, January 31, 2014, pet. filed). Indeed, the exercise of the right of association is defined by the statute as follows:

"Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.

*Id.* § 27.001(2) (emphasis added). The exercise of free speech has broad reach as well:

"Exercise of the right of free speech" means a communication made in connection with a matter of public concern.

*Id.* § 27.001(3). Matters of public concern include "an issue related to . . . a good, product, or service in the marketplace." *Id.* § 27.001(7)(e).

In addition to those broad definitions, the TCPA clearly states that it must "be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b)(emphasis added). The TCPA's scope reaches beyond public participation in government and media defendants. *See Combined Law Enforcement Assocs. of Texas v. Sheffield*, Cause No. 03-13-00105-CV, 2014 WL 411672, at *2, n.1 (Tex. App.—Austin, January 31, 2014, pet. filed) ("There is *nothing* in the plain language of the statute that limits its scope, as Sheffield argues, to a media defendant or solely to public participation in government.") (emphasis added). Rather, this Court recognized that the TCPA reaches beyond constitutional protections "to require a preliminary substantiation of legal actions relating to a broad range of organizational communications." *Id.*, at *12.

Accordingly, this Court found that communications among an organization's members to promote the organization's purpose were covered by the TCPA. *Id.*, at *5.

### 2. Autocraft's claims are in response to, or relate to, the Precision Parties' exercise of their freedoms of association and free speech.

All of Autocraft's claims center upon the Precision Parties communications as they promote and pursue their common interests in developing and maintaining a competitive auto body repair business. Autocraft's claims are based on the alleged disclosure of general business information or the alleged attempts by the Precision Parties "to convince employees to leave Autocraft and join [Precision]." Pl.'s Orig. Pet. at ¶ 13 **[CR 6]**; *see also id.* at ¶ 16 (seeking injunctive relief prohibiting communication of alleged confidential information and solicitation of Autocraft's employees)**[CR 6]**; *id.* at ¶ 21 (alleging that the Precision Parties are conspiring to use Autocraft's alleged trade secrets) **[CR 7]**; *id.* at ¶ 28 (claiming that Damian assisted in "unfairly competing with Autocraft," communicated business information to the other Precision Parties, and communicated with Autocraft employees encouraging them to change jobs). **[CR 8]** Based on Autocraft's own pleadings, it is clear that Autocraft's claims relate to the Precision Parties' communication in pursuit of their common interest and regarding their services in the marketplace.

Beyond the pleadings, the Precision Parties' evidence likewise establishes that Autocraft's claims impinge on the Precision Parties' exercise of their rights of association and free speech. Rey Hernandez testified that on multiple occasions he communicated with Autocraft employees about potential employment opportunities at Precision and, absent Autocraft's claims in this lawsuit, he expected that he would continue to do so. **[CR 26]** It is obvious that Borek's abusive management style was causing Autocraft to hemorrhage employees, with many seeking employment with the Precision Parties and Autocraft filed this suit to prevent communications with its employees that could lead to them relocating. Likewise, Both Hernandez and Damian testified that all of the mundane business practices claimed to be trade secrets in this case were not kept confidential and were well known throughout the industry. **[CR 25-27, 29-30]** Even so, Autocraft's claims, if successful, would prevent the Precision Parties from communicating regarding business procedures that are commonly employed in the automobile body repair shop industry. **[CR 27, 30]**

Clearly, the Precision Parties have met their burden establishing that Autocraft's claims are in response to, or at least relate to, the Precision Parties' exercise of their rights of association and free speech. Autocraft's claims seek to curtail the Precision Parties' use and communication of allegedly proprietary

information as they pursue their common interest of their competing business and recruit potential employees. Yet Autocraft wholly failed to put on evidence of the proprietary nature of the information or that the Precision Parties ever used it. The trial court committed reversible error by finding that the TCPA did not apply.

**B.  Because Autocraft wholly failed to meet its evidentiary burden, the trial court was required to dismiss Autocraft's claims.**

Because the TCPA applies to Autocraft's claims, the burden shifted to Autocraft to establish by clear and specific evidence a prima facie case for each essential element of its claims. *See Rehak Creative Svcs., Inc.*, 404 S.W.3d. at 723-724 (discussing the burden-shifting characteristics of the TCPA). Autocraft did not come close to meeting its burden. Autocraft's sole, conclusory affidavit amounts to no evidence of its claims, and certainly does not provide the clear and specific evidence required by the TCPA. Therefore dismissal of Autocraft's claims was required.

**1.  Conclusory statements in affidavits do not constitute "clear and specific evidence."**

Conclusory statements without factual foundation do not meet the "clear and specific evidence" burden required by TEX. CIV. PRAC. & REM. CODE § 27.005(c) to avoid dismissal. Thus, a party's conclusory statements regarding causation in a tortious interference with contract claim failed to meet the TCPA's burden

resulting in the dismissal of the plaintiff's claims. *See Schimmel v. McGregor*, 438 S.W.3d 847, 860-862 (Tex. App.—Houston [1ˢᵗ Dist.] 2014, pet. filed) ("We agree with Schimmel that the Buy-Out Owners presented only their conclusory statements, unsupported by any facts, that Schimmel's actions caused the City of Galveston to fail to close on the purchases."). Likewise, conclusory statements regarding damages are insufficient to meet the TCPA's burden of clear and specific evidence. *See Rehak Creative Svcs, Inc.*, 404 S.W.3d at 734 ("This conclusory assertion does not rise to the level of 'clear and specific' evidence sufficient to make out a prima facie case of damages caused by and attributable to the alleged misappropriation."). And this Court has long held that affidavits that do not provide a basis for the affiant's conclusions or their personal knowledge are fatally defective and constitute no evidence. *See Campbell v. Campbell*, Cause No. 03-07-00672-CV, 2010 WL 2477782, at *4-5 (Tex. App.—Austin June 18, 2010, no pet.) (finding affidavit insufficient because it did not show the basis for the affiant's personal knowledge of facts recited therein); *Sprayberry v. Siesta MHC Income Partners, L.P.*, Cause No. 03-08-00649-CV, 2010 WL 1404598, at *3-4 (Tex. App.—Austin April 8, 2010, no pet.) (discussing insufficiency of a conclusory affidavits because it "consists of factual or legal conclusions or

opinions that are not supported by facts"). Thus, Autocraft had to present more than conclusory evidence to meet its burden and avoid dismissal.

>    **2.     Autocraft failed to submit prima facie case for each essential element of its claims.**

Autocraft's sole affidavit submitted in response to the Precision Parties' Motion to Dismiss misses the mark. Autocraft asserts claims for trade secret misappropriation, unfair competition, and breach of fiduciary duty. Autocraft was required to present clear and specific evidence for *each* element for *each* of those claims. *See Rehak Creative Svcs, Inc.*, 404 S.W.3d at 732-734 (analyzing whether plaintiff had provided prima facie evidence of its claims for tortious interference, intentional infliction of emotional distress, conspiracy, and conversion and then dismissing those claims in the absence of evidence).

With regard to misappropriation of trade secrets (as well as Autocraft's other claims relying on such allegations), Autocraft was required to establish all of the elements set forth in TEX. CIV. PRAC & REM. CODE § 134A.002 for both "misappropriation" and "trade secret." Likewise, all of Autocraft's causes of action require evidence of damages and causation. *See id.* § 134A.004 (stating that a claimant seeking damages must prove causation or the amount of a reasonable royalty for the alleged trade secrets); *Beck v. Law Offices of Edwin J. ("Ted") Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.)(listing

elements for breach of fiduciary duty claims including existence of a fiduciary duty, breach of that duty, causation, and damages).[1]

Instead of providing clear and specific evidence for its claims, Autocraft instead submitted a sole, conclusory affidavit from John Borek. But Borek's affidavit is rife with speculation and unsubstantiated conclusions. These include:

- "Autocraft has *reason to believe* David Damian and other former employees who recently left and joined Rey Hernandez and Precision Auto Body . . . *may have* used or disclosed Autocraft's confidential, proprietary, and trade secret information . . .." **[CR 42, ¶ 2]** (emphasis added)

- "After David Damian and Joyce Garcia joined Precision Auto . . . Autocraft *learned* Prevision Auto was using its proprietary business forms and documents . . .." **[CR 42, ¶ 4]** (emphasis added)

- "*It is my understanding and belief* that David Damian and/or Joyce Garcia *and possibly others*, provided Rey Hernandez with most, if not all, of the above-mentioned confidential, proprietary and trade secret documents and information . . .." **[CR 42, ¶ 6]** (emphasis added)

- "*It is also my understanding and belief* that Precision Auto has used Autocraft's confidential information, including employee salary information, to recruit and solicit more Autocraft employees to join Precision Auto." **[CR 42, ¶ 7]** (emphasis added)

Statements based on Borek's understanding or belief do not provide *any* evidence of Autocraft's claims and certainly do not provide clear and specific evidence. Furthermore, Borek provides no factual basis to establish his purported personal

---

[1] In addition to these elements, Autocraft was required to submit clear and specific evidence for each element of Autocraft's other causes of action as well including its claims for injunctive relief, civil conspiracy, and vicarious liability. *See, e.g., Chon Tri v. J.T.T.*, 162 S.W.2d 552, 556 (Tex. 2005) (listing elements for civil conspiracy).

knowledge of any actions taken by the Precision Parties or any of his conclusions that the Precision Parties are unfairly competing with him.

In fact, Borek's affidavit provides absolutely no evidence regarding: (1) the efforts Autocraft took, if any, to maintain the secrecy of the alleged proprietary information, (2) the Precision Parties' appropriation of that information by improper means, or (3) that the information derives economic value from not being generally known or ascertainable by proper means. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002 (defining the elements to show misappropriation by improper means and the existence of a trade secret). Similarly, and without limitation, Autocraft failed to provide any evidence of damages or causation for its claims. Because Autocraft failed to provide clear and specific evidence for each element of its claims, all of Autocraft's claims should have been dismissed.

## C. The Precision Parties are entitled to an award of their reasonable attorneys' fees and expenses.

The trial court likewise erred by failing to award attorneys' fees and expenses to the Precision Parties. Upon dismissal of an action pursuant to the TCPA, the moving party is entitled to an award of its "court costs, reasonable attorneys' fees, and other expenses incurred in defending against the legal action." TEX. CIV. PRAC. & REM. CODE § 27.009. The Precision Parties' counsel presented evidence, without objection, of their reasonable and necessary attorneys' fees and

expenses incurred at the time of the hearing. **[RR 29-30]** Because the Precision Parties were entitled to dismissal of Autocraft's claims under the TCPA, they are entitled to an award of their attorneys' fees and expenses in the amount of $15,250.

**D.    The trial court erred by refusing to hear live testimony at the hearing on Motion to Dismiss.**

Although the Precision Parties' evidence attached to the Motion to Dismiss was sufficient to meet their burden, they were nonetheless prepared to present live testimony at the hearing on the Motion to Dismiss. But the trial court refused to hear that testimony. **[RR 22-24]** That testimony would have provided additional evidence of the impact Autocraft is urging upon the Precision Parties' freedoms of association and free speech.[2] **[RR 24-26]** Without limitation, that evidence would have shown that the forms claimed to be trade secrets by Autocraft are well known in the industry and can be freely found and ordered online. That evidence would have also established that the Precision Parties have been restricted from communicating with potential customers and employees. **[RR 25-26]**

The trial court excluded this evidence based upon an unduly narrow reading of section 27.006 which states:

---

[2]    The declarations of Hernandez and Damian along with Autocraft's pleadings provide ample evidence that Autocraft's claims relate to the Precision Parties' rights of association and free speech. However, and in the unlikely event that this Court finds that the Precision Parties failed to meet their burden, the proffered but excluded testimony should be considered in that regard. **[CR 25-28, 29-31]**

> In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

TEX. CIV. PRAC. & REM. CODE § 27.006. While that provision requires the trial court to consider the pleadings and affidavits, it does not restrict the evidence to pleadings and affidavits. The fact that materials other than the pleadings and affidavits may be considered is foreshadowed by other portions of the statute. Indeed, the TCPA allows for other discovery (including depositions or interrogatories) on a showing of good cause. *Id.* Such discovery would be meaningless if the discovery materials could not be considered as evidence relating to the Motion to Dismiss. The trial court erred by excluding the Precision Parties' live testimony.

## CONCLUSION AND PRAYER

The Precision Parties were entitled to dismissal of this action. Autocraft's claims directly impact, and certainly relate to, the Precision Parties' communications in pursuit of their common interest and regarding their services in the marketplace. Under these circumstances, Autocraft was required by the TCPA to present clear and specific evidence of each element of its claims. Autocraft wholly failed to do so thereby requiring that Autocraft's action be dismissed and

the Precision Parties be awarded their attorneys' fees and expenses. Accordingly, this Court should provide the Precision Parties the relief they deserve.

Accordingly, the Precision Parties respectfully request that this Court reverse the trial court's order denying the Motion to Dismiss, order that all of Autocraft's claims in this matter shall be dismissed, award the Precision Parties their attorneys' fees and expenses described above, and grant the Precision Parties such other and further relief to which they show themselves justly entitled.

Respectfully submitted,

**FRITZ, BYRNE, HEAD & HARRISON, PLLC**

BY:   /s/ Rick Harrison
      Rick Harrison
      Texas Bar No. 09120000
      rharrison@fbhh.com
      S. King
      Texas Bar No. 24067708
      aking@fbhh.com
      Dale L. Roberts
      Texas Bar No. 24001123
      droberts@fbhh.com

ATTORNEYS FOR APPELLANTS

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has this 10th day of March, 2015, been forwarded to counsel of record via electronic service, as follows:

James Ruiz
Texas Bar No. 17385860
jruiz@winstead.com
Jacylyn G. Austein
Texas Bar No. 24069760
Jaustein@winstead.com
WINSTEAD, P.C.
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 370-2818
Facsimile: (512) 370-2850

ATTORNEYS FOR APPELLEES

        /s/ Rick Harrison
        Rick Harrison

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limit of Tex. R. App. P. 9.4(i)(2)(B) because this brief contains  3,616 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).


        /s/ Rick Harrison
        Rick Harrison


Dated:  March 10, 2015

**APPENDIX INDEX**

ORDER DENYING MOTION TO DISMISS

ROBERTS DECLARATION

FINDINGS OF FACT AND CONCLUSIONS OF LAW

HERNANDEZ DECLARATION

DAMIAN DECLARATION

BOREK AFFIDAVIT

*COMBINED LAW ENFORCEMENT ASS'N OF TEXAS V. SHEFFIELD*

*SCHIMMEL V. McGREGOR*

TEX. CIV. PRAC. & REM CODE § 27.001 – 27.006

Filed In The District Court
of Travis County, Texas
on _____January 23, 2015:_____
at _____11:00____ AM.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-004535

| | | |
|---|---|---|
| AUTOCRAFT BODYWERKS, INC., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| ELITE AUTO BODY LLC, | § | |
| dba PRECISION AUTO BODY, | § | |
| REY R. HERNANDEZ, | § | TRAVIS COUNTY, TEXAS |
| YESICA DIAZ, and | § | |
| DAVID DAMIAN, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| vs. | § | |
| | § | |
| JOHN BOREK, | § | |
| | § | |
| *Third-Party Defendant.* | § | 345th JUDICIAL DISTRICT |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO CHAPTER 27 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

On the 22nd day of January, 2015, the Court heard Defendants' Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code (the "Motion"). After considering the pleadings, affidavits, and legal arguments, ~~the Court finds that Chapter 27 of the Texas Civil Practice and Remedies Code is inapplicable to this suit~~. It is therefore,

**ORDERED** that the Motion is hereby **DENIED** in all respects.

Signed this 23RD day of January 2015.

_____
PRESIDING DISTRICT COURT JUDGE
TIM SULAK

**CAUSE NO. 03-15-00064-CV**

In the Court of Appeals
For the Third Court of Appeals District
Austin, Texas

ELITE AUTO BODY LLC, d/b/a PRECISION AUTO BODY, REY R.
HERNANDEZ, YESICA DIAZ, AND DAVID DAMIAN,
*Appellants,*
v.
AUTOCRAFT BODYWERKS, INC., now known as WASSON ROAD
VENTURES, INC., d/b/a AUTOCRAFT BODYWERKS,
*Appellee.*

## DECLARATION OF DALE L. ROBERTS

1. My name is Dale L. Roberts. I am fully competent to make this Declaration. I have personal knowledge of the facts stated in this Declaration. I am one of the attorneys representing the Appellants in this matter.

2. The Finding of Fact and Conclusions of Law contained in the Appendix of Appellants' Brief is a true and correct copy of that signed by Judge Sulak on February 20, 2015.

3. My name is Dale L. Roberts. My date of birth is February 6, 1970, and my address is 1309 Choquette Drive, Austin, Texas 78757. As authorized by Section 132.001 of the Texas Civil Practice and Remedies

1

Code, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas, on March 10, 2015.


 /s/ Dale L. Roberts
Dale L. Roberts

**Filed in The District Court
of Travis County, Texas**

**FEB 20 2015**

At_____3:50 p M.

**Velva L. Price, District Clerk**

| | | |
|---|---|---|
| **AUTOCRAFT BODYWERKS, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **IN THE DISTRICT COURT** |
| | § | |
| **ELITE AUTO BODY LLC,** | § | |
| **dba PRECISION AUTO BODY,** | § | |
| **REY R. HERNANDEZ,** | § | **TRAVIS COUNTY, TEXAS** |
| **YESICA DIAZ, and** | § | |
| **DAVID DAMIAN,** | § | |
| | § | |
| *Defendants,* | § | **345th JUDICIAL DISTRICT** |
| | § | |
| **vs.** | § | |
| | § | |
| **JOHN BOREK,** | § | |
| | § | |
| *Third-Party Defendant.* | § | |

## FINDING OF FACT AND CONCLUSIONS OF LAW

On January 23, 2015, the Court entered its order denying Defendants' Motion to Dismiss under Chapter 27 of the Texas Civil Practice and Remedies Code (the "Order"). Pursuant to section 27.007(a) of the Texas Civil Practice and Remedies Code, the Court makes the following Findings of Fact and Conclusions of Law relating to the Order. To the extent that Findings of Fact may constitute Conclusions of Law, and vice versa, they shall be considered as such.

### Findings of Fact

1.      On October 29, 2014, Autocraft filed Plaintiff's Original Petition and Application for Injunctive Relief (the "Petition") against the Defendants seeking to enjoin their use of Autocraft's trade secrets and proprietary and confidential information to unfairly compete in the marketplace. In addition to the application for injunctive relief, Autocraft asserts the following claims: (1) misappropriation of trade secrets and violations of Chapter 134A of the Texas Civil

Practice and Remedies Code; (2) unfair competition; (3) breach of fiduciary duty; and (4) civil conspiracy.

2.      In response to the Petition, Defendants filed a Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practices and Remedies Code (the "Motion"), alleging that the case relates or is in response to Defendants' exercise of their rights of association or free speech.

3.      The Court held a hearing on the Motion on January 22, 2015, and the following day entered an order denying the Motion.

## Conclusions of Law

4.      Defendants did not meet their burden under Chapter 27 of the Texas Civil Practice & Remedies Code in showing by a preponderance of the evidence that this lawsuit is based on, relates to, or is in response to their exercise of the right of free speech, right to petition, or the right of association.

5.      Defendants did not meet their burden under Chapter 27 of the Texas Civil Practice & Remedies Code in showing that Plaintiff's action was brought to deter or prevent Defendants from exercising constitutional rights.

6.      Defendants did not meet their burden under Chapter 27 of the Texas Civil Practice & Remedies Code in showing that Plaintiff's action was brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.

7.      The Court concludes that dismissal of Plaintiff's claims against Defendants under § 27.005(b) of the Texas Civil Practice & Remedies Code is not appropriate in this case.

SIGNED this 20TH day of February 2015.

_____
Judge Tim Sulak
353rd Judicial District Court

| | | |
|---|---|---|
| AUTOCRAFT BODYWERKS, INC., now known as WASSON ROAD VENTURES, INC. dba AUTOCRAFT BODYWERKS, | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| vs. | § § | TRAVIS COUNTY, TEXAS |
| ELITE AUTO BODY LLC, d/b/a PRECISION AUTO BODY, REY R. HERNANDEZ, YESICA DIAZ, AND DAVID DAMIAN, | § § § § § | |
| Defendants. | § § | |

## DECLARATION OF REY R. HERNANDEZ

1.  My name is Rey R. Hernandez. I am fully competent to make this Declaration. I have personal knowledge of all the facts stated in this Declaration.

2.  I have been working in the auto body manufacture or repair industry for over 19 years. I have worked for BMW for over 12 years, achieving a management position overseeing body work on new BMW vehicles. In addition, I have worked in auto body repair shops for seven years.

3.  Through my experience in the auto body repair industry, I have become aware of common practices employed by auto body repair shops. It is common practice in the industry to use forms and checklists for tracking payment receipts, insurance information, workflow assignments and other information. Although the forms and checklists may follow different formats, they commonly contain information such as payment, information, authorizations, and vehicle and customer information.

Page 1

EXHIBIT

A    25

4. When I came to Austin in 2008, I accepted a job as a production manager at Autocraft Bodywerks ("AB") and worked there for approximately twelve months. During that time, the working conditions at AB were very unpleasant and hostile. AB's former owner, and now manager, John Borek, created that unpleasant working environment. For example, Mr. Borek frequently used abusive and vulgar language when speaking with employees and threatened them with reprisals, illegally withheld paychecks, and on occasion, physically assaulted them. Despite Mr. Borek's behavior, it was my impression that AB's employees were very competent and often talented.

5. While working at AB, I was never asked to sign or even agree to any limitations on my ability to compete with AB or solicit AB's employees following my employment. Likewise, I was never asked to sign a confidentiality agreement nor was I informed that any information about how AB conducted its business was secret or confidential. In fact, with the exception of Mr. Borek's behavior, AB's business was conducted similar to other auto body repair businesses. This included the use and content of AB's forms and checklists as well as referencing, when necessary, any technical service bulletins relating to a repair. I was never told by Mr. Borek, or anyone else, that AB's forms, checklists or compilation of technical service bulletins were secret or confidential, and I did not consider them to be secret because the use of similar forms, checklists and technical service bulletins is commonplace in the industry.

6. Due in large part to the unhealthy working environment caused by Mr. Borek, I left AB, and started Precision Auto Body ("Precision") in March, 2009. Over the next several years and through my experience in the industry, we developed Precision into a successful business. As part of that business, Precision subscribed to Alldata. That service provides access to, and the ability to search, all technical service bulletins that have been issued by all automobile

manufacturers. Precision remains a subscriber to that service to this day. Whenever a Precision employee needs to reference a technical service bulletin, the materials are obtained from Alldata.

7. By the beginning of 2014, Precision had seven employees and the business was continuing to grow. In March 2014, Precision hired David Damian to work as body shop manager. Over the years since leaving AB, I have occasionally been contacted by AB employees inquiring as to whether Precision could hire them, and on some occasions Precision has done so. That is how Damian came to work for Precision as well as Joyce Garcia. Mr. Damian, Ms. Joyce, and I have all expressed a desire to continue to grow Precision's business and attract experienced and talented individuals to work for Precision.

8. Because it was my impression that many of AB's employees were talented, I would expect and intend to communicate with AB employees regarding employment opportunities at Precision just as I would expect to communicate with any other potential Precision employees that are unrelated to AB. If AB is successful in its lawsuit, or even obtains a temporary injunction as it has requested, I would not be able to communicate with any other AB employees about potential employment opportunities.

9. Precision has not used any confidential or secret information in its business that was disclosed by either Mr. Damian or Joyce Garcia. Precision has not used any AB payroll or other AB financial information in any manner. This includes, without limitation, any employment decisions concerning any current or potential Precision employees. With regard to the business practices claimed by AB to be confidential or secret, these allegations would prevent me and others at Precision from communicating regarding mundane business issues such as using checklists and forms to ensure that office and shop procedures are followed.

Page 3

10.     My name is Rey R. Hernandez.  My date of birth is January 4, 1976, and my address is 1261 Cherrywood, Kyle, Texas 78640.  As authorized by Section 132.001 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas on this 20 th day of December, 2014.

_____
Ray R. Hernandez

| | | |
|---|---|---|
| AUTOCRAFT BODYWERKS, INC.,<br>now known as WASSON ROAD<br>VENTURES, INC. dba AUTOCRAFT<br>BODYWERKS, | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | TRAVIS COUNTY, TEXAS |
| ELITE AUTO BODY LLC, d/b/a PRECISION<br>AUTO BODY, REY R. HERNANDEZ,<br>YESICA DIAZ, AND DAVID DAMIAN, | §<br>§<br>§<br>§ | |
| Defendants, | §<br>.§ | |

## DECLARATION OF DAVID DAMIAN

1. My name is David Damian. I am fully competent to make this Declaration. I have personal knowledge of all the facts stated in this Declaration.

2. I have been working in the auto body repair industry for over 16 years. Through my experience in the auto body repair industry, I have become aware of common practices employed by auto body repair shops. It is common practice in the industry to use forms and checklists for tracking payment receipts, insurance information, workflow assignments and other information.

3. Between 2008 until March 2014, I worked as a Production Manager at Autocraft Bodywerks ("AB"). During that time, the working conditions at AB were very unpleasant and hostile. AB's former owner, and now manager, John Borek, created that unpleasant working environment. Mr. Borek constantly cursed at employees and was prone to angry outbursts.

Page 1



EXHIBIT

3

29

4.      While working at AB, I was never asked to sign, or even agree to, any limitations on my ability to compete with AB or solicit AB's employees following my employment. Likewise, I was never asked to sign a confidentiality agreement nor was I informed that any information about how AB conducted its business was secret or confidential. AB's business was conducted similar to other auto body repair businesses. This included the use and content of AB's forms and checklists as well as referencing, when necessary, any technical service bulletins relating to a repair. I was never told by Mr. Borek, or anyone else, that AB's forms, checklists or compilation of technical service bulletins were secret or confidential, and I did not consider them to be secret because the use of similar forms, checklists and technical service bulletins is commonplace in the industry.

5.      Due in large part to the unhealthy working environment caused by Mr. Borek, I left AB, and joined Precision. Mr. Hernandez, Ms. Garcia, and I have all expressed a desire to continue to grow Precision's business and attract experienced and talented individuals to work for Precision.

6.      I have not used any AB payroll or other AB financial information in any manner since leaving the employ of AB, and certainly not in any negotiations or business decisions. With regard to the business practices claimed by AB to be confidential or secret, these allegations would prevent me and others at Precision from communicating regarding mundane business issues such as using checklists and forms to ensure that office and shop procedures are followed.

Page 2

7. My name is David Damian. My date of birth is June 10, 1978, and my address is 11303 Stormy Ridge Road, Austin, Texas 78739. As authorized by Section 132.001 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas on this 20th day of December, 2014.

David Damian

CAUSE NO. D-1-GN-14-004535

| | | |
|---|---|---|
| AUTOCRAFT BODYWERKS, INC., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff.* | § | |
| | § | |
| vs. | § | |
| | § | |
| ELITE AUTO BODY LLC, | § | |
| dba PRECISION AUTO BODY, | § | |
| REY R. HERNANDEZ, | § | TRAVIS COUNTY, TEXAS |
| YESICA DIAZ, and | § | |
| DAVID DAMIAN, | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| vs. | § | |
| | § | |
| JOHN BOREK, | § | |
| | § | |
| *Third-Party Defendant.* | § | 345th JUDICIAL DISTRICT |

## AFFIDAVIT OF JOHN BOREK

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| TRAVIS COUNTY | § |

Before the undersigned authority, on this day appeared John Borek, who, after being duly sworn, states as follows:

1.  "My name is John Borek. I am over the age of eighteen years, am of sound mind, and capable of making this affidavit. I am the founder and general manager of Autocraft Bodywerks, Inc. ("Autocraft"), a full service high-end collision restoration auto-repair shop I established in 1984. I have personal knowledge of the facts and statements contained in this affidavit, and they are true and correct.

2.  Over the span of the three decades, during which I built Autocraft's business and customer base, I have spent substantial time and money developing specific business practices and forms, and creating a unique compilation of technical service bulletins and other information

770588v.1 57457-1      EXHIBIT A

which have been used in Autocraft's business and have provided Autocraft with an advantage over its competitors who do not know or use Autocraft's trade secrets and confidential and proprietary information. Autocraft has reason to believe David Damian and other former employees who recently left and joined Rey Hernandez and Precision Auto Body ("Precision Auto") may have used or disclosed Autocraft's confidential, proprietary, and trade secret information they obtained while employed with Autocraft in the course of their work for Precision Auto to provide Autocraft's competitor with an unfair competitive advantage.

3. Although Autocraft welcomes honest and fair competition, it will not tolerate dishonesty and unfair competition through use of its trade secrets and confidential and proprietary information by any of its former employees to provide a competitor with an unfair competitive advantage in the marketplace. For such reason, Autocraft commenced this suit against the Defendants to stop their use of Autocraft's trade secrets and proprietary and confidential information to unfairly compete in the marketplace. Autocraft has not asserted any claim to interfere with anyone's constitutional rights to free speech or association in this action.

4. Since Rey Hernandez started Precision Auto in the 2009 time frame, a few former employees of Autocraft joined Rey Hernandez at Precision Auto without incident. After David Damian and Joyce Garcia joined Precision Auto, however, Autocraft learned Precision Auto was using its proprietary business forms and documents, and that a copy of its proprietary compilation of Technical Service Bulletins had been taken to Precision Auto rather than Precision Auto spending the time and money subscribing to the various publications and searching through the tens of thousands of Technical Service Bulletins issued over the years to create its own compilation of information. I did not give David Damian, Joyce Garcia, or any other Autocraft employee, consent to take any proprietary work product, confidential information or trade secret with them when they left.

Page 2

5.    David Damian and Joyce Garcia, while employed at Autocraft and in connection with their job responsibilities, also had access to personnel information on employees, including salary information, and Autocraft's financial information, including profit and loss statements, which in the hands of a competitor provides it with an unfair competitive advantage.

6.    It is my understanding and belief that David Damian and/or Joyce Garcia, and possibly others, provided Rey Hernandez with most, if not all, of the above-mentioned confidential, proprietary and trade secret documents and information, and that they are now using the documents and information to unfairly compete with Autocraft. In fact, I saw a photograph of the service forms used at Precision Auto and they appear to be identical to Autocraft's proprietary business forms which have evolved and been tailored based on my thirty years of experience in the industry.

7.    It is also my understanding and belief that Precision Auto has used Autocraft's confidential information, including employee salary information, to recruit and solicit more Autocraft employees to join Precision Auto. Any such use of Autocraft's confidential personnel and financial information would be improper and unfair.

8.    This lawsuit has nothing to do with violating anyone's rights to free speech or free association. Instead, the lawsuit is intended to protect Autocraft's trade secrets and proprietary and confidential information."

770588v.1 57457-1

Further, Affiant sayeth naught.

_____
John Borek

SWORN TO AND SUBSCRIBED before me on this _17_ day of January, 2015.

KAREN L. KARNIK
MY COMMISSION EXPIRES
July 23, 2015

_____
Notary Public, State of Texas

Page 4

770588v.1 57457-1

2014 WL 411672
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

***MEMORANDUM OPINION***
Court of Appeals of Texas,
Austin.

COMBINED LAW ENFORCEMENT
ASSOCIATIONS OF TEXAS
and John Burpo, Appellants
v.
Mike SHEFFIELD, Appellee.

No. 03–13–00105–CV.    |    Jan. 31, 2014.

**Synopsis**
**Background:** Former employee of labor union representing law enforcement officers filed defamation action against union and its executive director. Defendants moved to dismiss action pursuant to the Texas Citizens Participation Act (TCPA). The District Court, Travis County, 353rd Judicial District, Amy Clark Meachum, J., denied motion. Defendants brought interlocutory appeal.

**Holdings:** The Court of Appeals, Jeff Rose, J., held that:

[1] former employee's defamation allegations related in part to defendants' exercise of right of association, such that former employee was required under TCPA to prove prima facie case with respect to allegations relating to exercise of that right;

[2] defamation action arose in context of a labor dispute, such that former employee was required to prove actual malice;

[3] there was no clear and specific evidence that statements made in exercise of defendants' right of association were made with actual malice;

[4] standard of proof for surviving motion to dismiss under TCPA does not violate open-courts provision of state constitution;

[5] restrictions on discovery during pendency of a TCPA motion to dismiss do not violate open-courts provision; and

[6] TCPA's definition of "right of association" was not unconstitutionally overbroad or void for vagueness as applied in present case.

Affirmed in part, reversed in part, and remanded.

West Headnotes (14)

**[1]    Appeal and Error**
   🔑 On motions relating to pleadings

The Court of Appeals had jurisdiction under civil practices and remedies code over interlocutory appeal from the denial of a motion under Texas Citizens Participation Act (TCPA) to dismiss defamation action, regardless of whether TCPA expressly authorized the interlocutory appeal. V.T.C.A., Civil Practice & Remedies Code §§ 27.008, 51.014(a)(12).

3 Cases that cite this headnote

**[2]    Appeal and Error**
   🔑 Constitutional questions

Labor union and its executive director could not raise arguments relating to their free speech or petition rights on interlocutory appeal from the denial of their motion under Texas Citizens Participation Act (TCPA) to dismiss defamation action by former employee, though union and executive asserted those rights in an affirmative defense, where their motion to dismiss asserted only the right of association. V.T.C.A., Civil Practice & Remedies Code §§ 27.005, 51.014.

Cases that cite this headnote

**[3]    Pleading**
   🔑 Frivolous pleading
**Pleading**
   🔑 Application and proceedings thereon

Former employee's defamation claim against labor union representing law enforcement

officers and against union's executive director related to those defendants' exercise of right of association, such that former employee was required to prove prima facie case to survive motion to dismiss under Texas Citizens Participation Act (TCPA), to the extent that claim concerned an e-mail sent by executive director to union's board and staff, stating that executive board had directed him to file criminal charges against former employee for deleting computer files that were union's property, and that union's corporate attorney had advised that such conduct was a criminal act under state law. V.T.C.A., Civil Practice & Remedies Code §§ 27.001(2), 27.005(b, c).

Cases that cite this headnote

**[4]** **Pleading**
 Frivolous pleading

**Pleading**
 Application and proceedings thereon

Former employee's defamation claim against labor union representing law enforcement officers and against union's executive director related to those defendants' exercise of right of association, such that former employee was required to prove a prima facie case to survive motion to dismiss under Texas Citizens Participation Act (TCPA), to the extent the claim related to an alleged comment by executive director to a prospective employee, made while prospective employee was president of a constituent local police association, that executive director and union were still dealing with former employee because of former employee's "criminal conduct." V.T.C.A., Civil Practice & Remedies Code §§ 27.001(2), 27.005(b, c).

Cases that cite this headnote

**[5]** **Pleading**
 Frivolous pleading

**Pleading**
 Application and proceedings thereon

Former employee's defamation claim against labor union representing law enforcement

officers and against union's executive director related to those defendants' exercise of right of association, such that former employee was required to prove a prima facie case to survive motion to dismiss under Texas Citizens Participation Act (TCPA), to the extent the claim was based on alleged statements by union officials to president of a constituent local police association that criminal charges could be filed against former employee by union for what former employee had done. V.T.C.A., Civil Practice & Remedies Code §§ 27.001(2), 27.005(b, c).

Cases that cite this headnote

**[6]** **Pleading**
 Frivolous pleading

**Pleading**
 Application and proceedings thereon

Former employee's defamation claim against labor union representing law enforcement officers and against union's executive director did not relate to those defendants' exercise of their right of association, so as to require former employee to prove a prima facie case to avoid dismissal under the Texas Citizens Participation Act (TCPA), to the extent the claim was based on an alleged remark by union's corporate attorney that a local police chief had created a special employment position for the former employee after union fired him, where there was no allegation or evidence that counsel made alleged remark to a member of union. V.T.C.A., Civil Practice & Remedies Code §§ 27.001(2), 27.005(b, c).

Cases that cite this headnote

**[7]** **Pleading**
 Frivolous pleading

**Pleading**
 Application and proceedings thereon

Former employee's defamation claim against labor union representing law enforcement officers and against union's executive director did not relate to those defendants' exercise of their right of association, so as to require former

employee to prove a prima facie case to avoid dismissal under the Texas Citizens Participation Act (TCPA), to the extent the claim was based on alleged remarks by union's corporate attorney to a county district attorney attempting to persuade the latter to permit corporate attorney to present evidence to a grand jury in pursuit of an indictment of former employee, where there was no allegation of evidence that district attorney was a member of union. V.T.C.A., Civil Practice & Remedies Code §§ 27.001(2), 27.005(b, c).

Cases that cite this headnote

**[8]** **Libel and Slander**
   Qualified Privilege

Defamation action by former employee against labor union and its executive director in connection with alleged statements attributing criminal conduct to former employee arose in context of a "labor dispute" under National Labor Relations Act (NLRA), such that former employee was required to prove actual malice; former employee invoked NLRA regarding the dispute twice by filing unfair labor practices claims with National Labor Relations Board (NLRB) months after his employment was terminated. National Labor Relations Act, § 2(9), 29 U.S.C.A. § 152(9).

Cases that cite this headnote

**[9]** **Libel and Slander**
   Existence and Effect of Malice
**Pleading**
   Frivolous pleading
**Pleading**
   Application and proceedings thereon

There was no evidence that e-mail from executive director of labor union to union's board and staff, stating that executive board had directed him to file criminal charges against former employee for deleting computer files that were union's property, and that union's corporate attorney had advised that such conduct was a criminal act under state law, was untrue or that executive director acted with reckless disregard for truth of those statements, as

necessary for former employee to establish prima facie case of defamation on motion of union and executive director under Texas Citizens Participation Act (TCPA) to dismiss a claim arising from defendants' exercise of right of association. V.T.C.A., Civil Practice & Remedies Code § 27.005.

Cases that cite this headnote

**[10]** **Libel and Slander**
   Existence and Effect of Malice
**Pleading**
   Frivolous pleading
**Pleading**
   Application and proceedings thereon

There was no clear and specific evidence that statements by officials of labor union representing law enforcement officers to president of constituent police officer association, that conduct of a former employee of union "could go criminal," that it was "going to court," and that criminal charges could be filed against former employee by union for what he had done were untrue or were made with reckless disregard for the truth of those statements, as necessary for former employee to establish prima facie case of defamation and thereby survive motion of union and executive director under Texas Citizens Participation Act (TCPA) to dismiss claim as being a response to their exercise of right of association. V.T.C.A., Civil Practice & Remedies Code § 27.005.

Cases that cite this headnote

**[11]** **Constitutional Law**
   Conditions, Limitations, and Other Restrictions on Access and Remedies
**Pleading**
   Application and proceedings thereon

Texas Citizens Participation Act (TCPA) does not impose a higher standard of proof, with respect to surviving a motion to dismiss an action filed in response to the exercise of free speech, petitioning, or association rights, than would be required at trial, and thus does not, under that theory, violate open-courts provision

of state constitution; TCPA requires only that claimant produce evidence that establishes a prima facie case, and thus does not increase the preponderance-of-evidence standard applicable at trial, despite characterizing evidence needed to support prima facie case as "clear and specific." Vernon's Ann.Texas Const. Art. 1, § 13; V.T.C.A., Civil Practice & Remedies Code § 27.005(c).

Cases that cite this headnote

**[12]** **Constitutional Law**
  ☞ Conditions, Limitations, and Other Restrictions on Access and Remedies

**Pretrial Procedure**
  ☞ Objections and protective orders

Restrictions on discovery during the pendency of a motion to dismiss under Texas Citizens Participation Act (TCPA) are reasonable and therefore do not violate a plaintiff's rights under open-courts provision of state constitution; provisions staying discovery are tempered by provisions permitting discovery upon a showing of good cause, and stay provisions can curtail potentially costly discovery in a potentially meritless case, thus serving TCPA's goal of keeping litigation from being used to chill exercise of constitutional rights. Vernon's Ann.Texas Const. Art. 1, § 13; V.T.C.A., Civil Practice & Remedies Code §§ 27.003(b), 27.006(b).

Cases that cite this headnote

**[13]** **Constitutional Law**
  ☞ Costs and fees; indigency

**Costs**
  ☞ On dismissal, nonsuit, default, or settlement

Texas Citizens Participation Act (TCPA) does not mandate fee awards to a defendant that prevails on motion to dismiss an action arising from the exercise of constitutional rights of expression and association, and, therefore, TCPA's fee award provisions do not violate open-courts guarantees on their face. Vernon's Ann.Texas Const. Art. 1, § 13; V.T.C.A., Civil Practice & Remedies Code § 27.009(a).

Cases that cite this headnote

**[14]** **Constitutional Law**
  ☞ Particular Issues and Applications

**Constitutional Law**
  ☞ Course and conduct of proceedings in general

**Pleading**
  ☞ Frivolous pleading

Definition in Texas Citizens Participation Act (TCPA), stating that the exercise of the "right of association" encompassed a communication between individuals who join together to express, promote, pursue or defend common interests, was not unconstitutionally overbroad under First Amendment or void for vagueness under due process principles as applied in action in which labor union and its executive director successfully moved for dismissal of defamation claims asserted by former employee in connection with statements regarding alleged criminal conduct on his part. U.S.C.A. Const.Amends. 1, 14;; V.T.C.A., Civil Practice & Remedies Code §§ 27.001(2), 27.005.

Cases that cite this headnote

From the District Court of Travis County, 353rd Judicial District, No. D–1–GN–12–003281; Amy Clark Meachum, Judge Presiding.

**Attorneys and Law Firms**

Sean E. Breen, Howry, Breen & Herman, L.L.P., Randy T. Leavitt, The Law Office of Randy T. Leavitt, Austin, TX, for appellee.

Molly Lawrence, Tanner and Associates, P.C., James Roddy Tanner, Fort Worth, TX, B. Craig Deats, Deats Durst, Owen & Levy, P.L.L.C., Austin, TX, for appellant.

Before Justices PURYEAR, ROSE, and GOODWIN.

*MEMORANDUM OPINION*

JEFF ROSE, Justice.

**\*1** Combined Law Enforcement Associations of Texas and John Burpo brought this interlocutory appeal of the denial of their motions to dismiss Mike Sheffield's defamation claims. Appellants contend that they triggered the dismissal procedures of the Texas Citizens Participation Act by showing that Sheffield filed his lawsuit in response to their exercise of their right of association. *See* Tex. Civ. Prac. & Rem.Code §§ 27.001–.011. Appellants contend that Sheffield failed to respond with clear and specific evidence showing a prima facie case for each essential element of his claims as required to avoid dismissal under the TCPA. They further contend that the trial court erred by failing to award them their costs, reasonable attorney's fees, and other expenses incurred in defending this suit.

We will reverse the trial court's order denying the motion to dismiss with respect to claims based on comments made among CLEAT members and will dismiss those claims pursuant to the TCPA. We will affirm the order denying the motion to dismiss Sheffield's claim based on comments made to the district attorney and other unnamed persons. We will remand the case for further proceedings consistent with this opinion, including consideration by the trial court of an award of costs and fees relating to the motion to dismiss.

## FACTUAL BACKGROUND

CLEAT is a labor union that represents law enforcement officers. Burpo was its executive director, and Sheffield worked for CLEAT as a field service representative, having retired from the Austin Police Department. He was assigned to help various local police associations including the Austin Police Association (APA). After disagreements relating to the scope and manner of Sheffield's interactions with APA members, Burpo fired him on July 18, 2011.

The comments giving rise to the defamation claims in this case relate to Sheffield's conduct with respect to his CLEAT-issued laptop computer in the aftermath of his firing. When he was fired, Sheffield had his CLEAT computer at home. Sheffield asserts by affidavit that the standard practice at CLEAT was to erase a departing employee's computer, reprogram it, and then give it to another employee. Sheffield states that a computer store technician saved his personal files to a thumb drive. Sheffield says he then took the computer home and deleted data from the laptop's hard drive intending to prevent disclosure of personal information. He turned in his

laptop to CLEAT and says he was assured by the employee receiving it that his actions were acceptable.

Appellants assert that CLEAT's practice was always to control the computer-scrubbing process, downloading files beforehand to avoid the complete loss of data. CLEAT's expert analyzed Sheffield's computer and found some data—including some partial documents and emails—that appellants contend support their reasons for firing Sheffield. Appellants contend that the data was potentially relevant in legal proceedings relating to the firing that followed—complaints and suits by both sides that have been rejected, dismissed, or withdrawn.

**\*2** The parties have engaged in a series of legal wranglings. Sheffield filed unfair labor practices grievances and complaints against CLEAT with his union and the National Labor Relations Board. The union declined to pursue the grievance in arbitration, and the NLRB dismissed one complaint before Sheffield withdrew the other two. Meanwhile, Sheffield returned to work at the Austin Police Department, which prompted APD's Special Investigations Unit to investigate CLEAT's allegations that Sheffield had committed a crime by scrubbing his CLEAT computer's memory. APD found no criminal element in the conduct by Sheffield. According to APD's memo, however, its investigation was limited by CLEAT's decision not to supply APD with evidence because CLEAT wanted either Williamson County or federal authorities to investigate. APD also referred the issue to the FBI's cybercrimes unit which found "no federal [criminal] element" in Sheffield's behavior. Sheffield averred that the Lockhart Police Department (where he also worked post-CLEAT) also investigated and "likewise cleared [him]." The Williamson County grand jury in August 2012 declined to indict Sheffield. CLEAT states that in August 2012 it filed a conversion action against Sheffield in Williamson County that was transferred to Travis County and then nonsuited.

## PROCEDURAL BACKGROUND

Sheffield's defamation suit is based on comments allegedly made by Burpo and others associated with CLEAT. The core of Sheffield's complaint in his live petition is as follows:

> [O]n one or more occasions, the Defendants defamed Mr. Sheffield by uttering and/or broadcasting

and/or repeating statements and false allegations that Mr. Sheffield committed criminal acts in connection with his employment with CLEAT. Those allegations included that Sheffield inappropriately accessed CLEAT's computer system and deleted files with the intention of harming CLEAT. Upon information and belief, such false accusations were broadcast to 70 plus police officers and former co-workers of Mr. Sheffield, at least. The statements were made by an officer or agent of CLEAT acting within his or her scope of authority in publishing the defamatory statement.

Appellants moved to dismiss this claim under the TCPA, a statute enacted by the Texas Legislature in 2011 to "safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." [1] Tex. Civ. Prac. & Rem.Code § 27.002. One way the statute seeks to protect those rights is by providing an early dismissal mechanism for certain categories of lawsuits. If a defendant shows by a preponderance of the evidence that the plaintiff's suit is based on, relates to, or is in response to the defendant's exercise of the rights listed in section 27.002, the TCPA requires dismissal of the suit unless the party bringing the legal action "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *See id.* §§ 27.003, .005(c). The TCPA must be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). In their motions to dismiss under the TCPA, appellants asserted that Sheffield's suit was in response to a single email Burpo sent to the CLEAT board and staff. They argued that TCPA applies because Sheffield's suit impinges on their right of association and that Sheffield could not establish a prima facie case for defamation.

[1] There is nothing in the plain language of the statute that limits its scope, as Sheffield argues, to a media defendant or solely to public participation in government.

**\*3** In his response to appellants' motions to dismiss, Sheffield listed five communications that he alleges were made in 2012 and were defamatory:

(1) An email sent on January 4 from Burpo to the CLEAT board and staff. [2] Burpo sent the email after the NLRB set a hearing on Sheffield's complaint that he was fired for violating an overly broad limitation on work-related communications. In the email, Burpo discussed the nature and consequences of the NLRB's action. Sheffield focuses on this statement, "The Executive Board has directed me to file criminal charges against Sheffield for deleting files that were the property of CLEAT which [CLEAT attorney] Rod Tanner advises is a criminal act under Texas law."

[2] This is the email that appellants asserted was the sole basis of Sheffield's complaint.

(2) An alleged comment by Burpo to Corpus Christi Police Officers Association President Mike Staff in the summer. Staff said in an affidavit that Burpo offered him a job with CLEAT and discussed an ongoing reshuffling within CLEAT. According to Staff, Burpo told him that "he and CLEAT were still dealing with Mike Sheffield because of what Mr. Burpo told me was Mr. Sheffield's 'criminal conduct' and that he thought that would end soon."

(3) Alleged statements various CLEAT officials made to Laredo Police Association President Luis Dovalina. In his affidavit, Dovalina states that CLEAT Region 2 Director Mark Guerra "would not or could not provide an answer to why Mr. Sheffield was terminated but did state to me 'it could go criminal, for what he did.' " Although Dovalina said he asked for specifics on Sheffield's termination, he said he never received them and was not told that "a grand jury and other investigations had never led to any charges against Mr. Sheffield." Dovalina said that, when he later asked Burpo about Guerra's comments, Dovalina said that Burpo "informed me that it was 'going to court,' and that he would brief me on it at a later date" but never did. He averred that three or four CLEAT officials "stated to me that criminal charges could be filed against Sheffield by CLEAT for what Mr. Sheffield had done."

(4) Statements allegedly made by CLEAT corporate counsel John Curtis that APD chief Art Acevedo created a special employment position for Sheffield after CLEAT fired him. Sheffield asserts that this allegation (a) was false because the positions were created previously and independent of his employment situation and (b) was "tantamount to an assertion of

conduct violating Section 39 .02 of the Texas Penal Code" governing abuse of official capacity.

(5) Statements Curtis allegedly made to Williamson County District Attorney John Bradley attempting to persuade him to allow Curtis to present information to the grand jury in pursuit of an indictment of Sheffield on grounds that he had violated Penal Code chapter 33.

The district court denied the motions to dismiss without stating a basis [3] and was not asked to make findings of fact or conclusions of law in support of its decision.

[3]    Appellants also sought dismissal for want of jurisdiction and through special exceptions, but those motions are not presented in this appeal because interlocutory appeal is authorized only from the denial of the motion to dismiss under the TCPA. *See* Tex. Civ. Prac. & Rem.Code §§ 27.008, 51.014.

### DISCUSSION

**\*4** Appellants contend that the trial court erred in denying their motions to dismiss because the TCPA applies and Sheffield failed to establish a prima facie case of defamation. They also contend that the trial court erred by failing to award them attorney's fees.

### I. Jurisdiction over this appeal

 **[1]    [2]**    By their first issue, appellants respond to appellee's motion to dismiss this interlocutory appeal. Sheffield contends that this Court lacks jurisdiction because the TCPA does not expressly authorize an interlocutory appeal when the trial court expressly denies the motion. Sheffield contends that interlocutory appeal is authorized only when the trial court fails to rule and the motion to dismiss is overruled by operation of law under the statute. *See* Tex. Civ. Prac. & Rem.Code § 27.008. This Court has determined, however, that regardless of the meaning of the original statute, the civil practice and remedies code as amended in 2013 confers jurisdiction over appeals such as this one. *See Kinney v. BCG Att'y Search, Inc.,* No. 03–12–00579–CV, 2013 WL 4516106 at \*4 (Tex.App.-Austin Aug.21, 2013, no pet. h.); *see also* Tex. Civ. Prac. & Rem.Code § 51.014(a)(12); Act of May 24, 2013, 83d Leg., H.B. 2935, ch. 1042, § 4. Based on the reasoning in that opinion, we sustain appellants' first issue, deny Sheffield's motion to dismiss, and proceed to consider the remaining issues raised on appeal.

### II. Applicability of the TCPA

Appellants contend in their second issue that the trial court erred if it denied the motions to dismiss on grounds that the TCPA does not apply in this case. The party seeking dismissal of a legal action under the TCPA must show by a preponderance of the evidence that the legal action is "based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition or the right of association." Tex. Civ. Prac. & Rem.Code § 27.005. " 'Legal action' means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Appellants argue that the TCPA does apply to the disputed statements.

As an initial matter, we note that appellants cited only the right of association in their motions to dismiss, so the trial court's rejection of that theory is the only one of the three rights protected under the TCPA that is preserved here for appellate review. *See* Tex.R.App. P. 33.1; Tex. Civ. Prac. & Rem.Code § 27.005. Because interlocutory appeals are allowed only in limited situations, we strictly construe the statute permitting such appeals. *See* Tex. Civ. Prac. & Rem.Code § 51.014; *see also Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 355 (Tex.2001). Although appellants argue on appeal that their statements relating to prosecution are within the TCPA as exercises of the rights of free speech or petition, they listed those claims as their thirteenth affirmative defense but did not raise those arguments at the trial court in their motions to dismiss. Because they did not raise the free speech or petition rights as grounds for dismissal under the TCPA, the trial court did not reject them in denying the motions to dismiss, and arguments relating to those contentions are not properly within the limited scope of this interlocutory appeal. *See* Tex.R.App. P. 33.1(a)(1). Further, although the TCPA is intended to protect the exercisers of certain constitutionally protected rights from unfounded lawsuits, there is no showing that the TCPA's dismissal process is a fundamental right. We find no statutory or judicial exception permitting these arguments to be raised for the first time in this interlocutory appeal of the denial of appellants' motions to dismiss. We overrule those portions of issue two concerning arguments about the exercise of the rights of free speech and petition. For the same reason, we will not consider the merits of the remaining appellate issues with respect to the free-speech and petition theories but rather will evaluate appellants' claims under the rights asserted in their motion to dismiss, i.e. the right of association.

**\*5** **[3]** **[4]** **[5]** Appellants plainly asserted in their motion to dismiss that Sheffield's claim related to their exercise of the right of association. The TCPA defines the exercise of the right of association as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem.Code § 27.001(2). Affidavits from Burpo, Staff, and Dovalina show that three of the communications (those set forth above in numbered paragraphs 1–3) that Sheffield alleges to be defamatory fall within the TCPA's definition of the exercise of the right of association. Burpo's email to the CLEAT board and staff regarding Sheffield's NLRB claim as well as Burpo's and CLEAT staff's comments to two presidents of CLEAT's constituent local police associations (Corpus Christi's Staff and Laredo's Dovalina) were made between or among members of CLEAT. In the statute's terms, these were communications between individuals who joined together in CLEAT to collectively express, promote, or defend the common interests of police officers. *See id.* § 27.001(2). Sheffield's suit against CLEAT and Burpo for defamation through those statements plainly is based on, relates to, or is in response to these communications made in the exercise of the right of association, triggering Sheffield's burden to prove a prima facie case on these complaints.

**[6]** **[7]** Appellants did not show by a preponderance of the evidence that two other communications (those set forth above in numbered paragraphs 4–5) that Sheffield alleged were made by CLEAT's corporate attorney were within the TCPA's definition of the exercise of the right of association: (1) Curtis's allegations that APD chief Art Acevedo created a special employment position for Sheffield after CLEAT fired him, and (2) Curtis's conversation with the Williamson County district attorney when asking that he file charges. There is no allegation or evidence that Curtis made either set of these remarks to a member of CLEAT. Indeed, there is no allegation or evidence regarding to whom Curtis allegedly said that Acevedo created a job for Sheffield. There is also no allegation or evidence that then-district attorney Bradley was a CLEAT member. Appellants have not shown by a preponderance of the evidence that Curtis made these communications to an individual with whom he had joined together to collectively express, promote, pursue, or defend common interests.

We conclude that the trial court did not err by denying the motions to dismiss under the TCPA with respect to the communications described in paragraphs 4 and 5 above-i.e., Curtis's communications with the district attorney or unknown persons. We overrule issue two on those claims. Because appellants did not show by a preponderance of evidence that these statements were communications made in the exercise of appellants' right of association as defined by the TCPA, the burden did not shift to Sheffield to present a prima facie case on these claims to avoid dismissal, and we need not consider the propriety of the denial of the motion to dismiss these claims any further. *See* Tex. Civ. Prac. & Rem.Code §§ 27.001(2), .005(b). With respect to the communications described in paragraphs 1, 2, and 3 above, evidence showed that these communications were made between or among CLEAT members and, thus, that the trial court erred if it dismissed based on a finding that appellants did not show that Sheffield's claims related to their exercise of the right of association. We sustain issue two with regard to the communications described in paragraphs 1, 2, and 3 above.

**III. Prima facie case**

**\*6** By their third issue, appellants assert that the trial court erred if it denied their motions to dismiss by concluding that Sheffield made a prima facie case on each element of his claims regarding the communications described in paragraphs 1, 2, and 3 above as required to avoid dismissal of those claims under the TCPA. To make a prima facie case of defamation, the plaintiff must prove that the defendant (1) published a statement (2) that was defamatory concerning the plaintiff (3) while acting with either actual malice or negligence regarding the truth of the statement, depending on the nature of the parties and the dispute. *See WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998). Persons who are not public figures or involved in public issues typically need show only that the defendant knew or should have known that the defamatory statement was false. *See Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex.1976).

Appellants contend that Sheffield had to meet the higher intent standard because this dispute arose in the context of a labor dispute. In defamation claims arising out of labor disputes, the plaintiff must show that the defendant acted with actual malice in order to prevail in state court. The Supreme Court has held that the National Labor Relations Act preempts most state laws related to labor disputes and vests exclusive jurisdiction for related formal legal disputes in the NLRB. *See San Diego Bldg. Trades Council, Local 2020 v. Garmon,* 359 U.S. 236, 243–44, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (cited in *Linn v. United Plant Card Workers of Am., Local 114,* 383 U.S. 53, 59, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966)). The *Garmon* court excepted from that

preemption those claims that are peripheral to the concerns articulated in the NLRA and that are based on interests deeply-rooted in local concerns. *Id.* The *Linn* court wrote that defamation was an issue of such deeply-rooted local interest that state courts could retain jurisdiction over defamation cases if the plaintiff showed the defendant had actual malice in making the defamatory statement. 383 U.S. at 64–65. The court opined that this approach balances the tensions among preserving expressive leeway for participants in heated labor disputes, limiting use of state-court defamation suits as a weapon in labor disputes, and allowing participants in those disputes to defend their reputations from untruthful attacks. *Id.*

 **[8]**    While the seminal Supreme Court cases involved larger-scale labor disputes and activities like picketing (*Garmon,* 359 U.S. at 237) and union organizing (*Linn,* 383 U.S. at 55), this case, too, presents a labor dispute under the law. The NLRA defines "labor dispute" as "any controversy concerning the terms, tenure, or conditions of employment ... regardless of whether the disputants stand in the proximate relation of employer or employee." 29 U.S.C. § 152(9). Sheffield was a CLEAT employee who had his tenure ended, then disputed the terms of his employment and their role in his termination. Sheffield plainly elevated this controversy above a standard job-termination case when he invoked the NLRA regarding this dispute twice by filing unfair labor practices claims with the NLRB months after his employment was terminated. His complaints—first that CLEAT discharged him for union activities and for violating an overly broad workplace rule, and then that CLEAT retaliated against him for filing the first unfair labor practices claim—show that the circumstances of this case constitute a labor dispute as defined by the NLRA. *See id.*

 **\*7**   For such cases, the Supreme Court adopted the standard of actual malice used in defamation cases brought by public officials against media defendants. *Linn,* 383 U.S. at 65 (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). "Actual malice" in the defamation context does not necessarily include ill will, spite, or evil motive. *Sullivan,* 376 U.S. at 279–80; *Huckabee v. Time Warner Entm't Co.,* 19 S.W.3d 413, 420 (Tex.2000). To establish actual malice, a plaintiff must prove that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was true or not." *Sullivan,* 376 U.S. at 279–80; *Huckabee,* 19 S.W.3d at 420. To establish reckless disregard, a plaintiff must prove that the publisher "entertained serious doubts as to the truth of

his publication." *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Huckabee,* 19 S.W.3d at 420. Plaintiffs who must show actual malice have the burden to prove that the defamatory statement was not true. *See Huckabee,* 19 S.W.3d at 420.

A timeline of the parties' legal proceedings is helpful to provide the context needed to assess whether each alleged defamatory statement was made with knowledge of its falsity or reckless disregard of its truth—i.e., whether Sheffield proved a prima facie case of defamation. Sheffield filed his unfair labor practices claim with the NLRB on October 20, 2011. On December 30, 2011, the NLRB set one of his labor dispute claims for hearing in early 2012. In February 2012, APD's Special Investigation Unit found no criminal element present in Sheffield's behavior and the FBI's cybercrimes unit found no violations of federal law. Sheffield filed another NLRB complaint on March 12, 2012, but withdrew it on April 30, 2012. He withdrew his remaining NLRB complaint on July 19, 2012. The Williamson County Grand Jury declined to indict Sheffield in August 2012. We will consider each allegedly defamatory statement in the context of the speaker's knowledge at the time of the statement.

 **(1) The January 4, 2012 email** sent from Burpo to the CLEAT board and staff stating, "The Executive Board has directed me to file criminal charges against Sheffield for deleting files that were the property of CLEAT which [CLEAT attorney] Rod Tanner advises is a criminal act under Texas law."

 **[9]**    Sheffield produced no evidence that, when Burpo sent this email, appellants either knew that any aspect of this statement was false or recklessly disregarded whether it was true. Although Sheffield clearly disagrees that his actions were criminal or warranted criminal charges, he has not alleged or established a prima facie case that Burpo was reckless with the truth of his statement about the board's direction to him or CLEAT's attorney's advice to him. There is no showing that the investigations Sheffield cites as exonerating him were complete when Burpo sent the email, or that the allegations had been presented to and rejected by the district attorney or grand jury. The only indication in the record is that the investigations and presentation to the grand jury occurred after January 4, 2012. Sheffield has not shown that Burpo made an untrue statement or had the requisite disregard for the truth of these statements when he sent the January 4, 2012 email.

**\*8 (2) Burpo's statement in the summer of 2012** to Corpus Christi Police Officers Association President Mike Staff that Burpo "and CLEAT were still dealing with Mike Sheffield because of what Mr. Burpo told me was Mr. Sheffield's 'criminal conduct' and that he thought that would end soon."

The potentially defamatory aspect of this statement is the use of the term "criminal conduct." APD's February investigation that found no criminal element in Sheffield's conduct does not prove that CLEAT knew this statement was false or recklessly disregarded whether it was true. Given the lack of evidence on the scope and purpose of APD's investigation and CLEAT's alleged lack of cooperation with the investigation, Sheffield has not set out a prima facie case that APD's conclusion informed appellants that their statements were false or gave them serious doubts about their truth. Appellants, supported by CLEAT's attorney's opinion, insisted at least through the August 2012 presentation to the Williamson County grand jury that Sheffield committed a crime, and Sheffield has not presented a prima facie case that Burpo was reckless with regard to the truth of his statement. Even if the grand jury's no-bill made any subsequent allegation of criminal conduct reckless, Sheffield did not present clear and specific evidence that the statement to Staff occurred after the grand jury's decision. We find no clear and specific evidence that, when attributing "criminal conduct" to Sheffield in a statement to Staff, appellants either knew that Sheffield's conduct was not criminal or entertained serious doubts about the truth of their statements. *See St. Amant,* 390 U.S. at 731.

**(3) Statements to Laredo Police Association President Luis Dovalina** by CLEAT Region 2 Director Mark Guerra that "it could go criminal, for what [Sheffield] did." Dovalina said Burpo "informed me that it was 'going to court.' " Other CLEAT officials "stated to me that criminal charges could be filed against Sheffield by CLEAT for what Mr. Sheffield had done."

**[10]** As with the statements to Staff, Sheffield did not pinpoint the timing of these alleged communications. It is also not clear exactly what it means for charges to "go criminal." This lack of specificity undermines Sheffield's attempt to make a prima facie case of defamation. Reaction to Sheffield's actions "*could* " have "go[ne] criminal"—and arguably did, briefly, in the Williamson County District Attorney's presentation of the allegations to the grand jury. Similarly, "criminal charges *could* [have been] filed," and appellants attempted to make that happen by pursuing their presentation

to the grand jury. The allegations did in fact go "to court"—arguably in the grand jury presentation and definitely in the civil action. Sheffield failed to show by clear and specific evidence a prima facie case that appellants' statements to Dovalina were not true, much less that appellants either knew that Sheffield's conduct was not criminal or entertained serious doubts about the truth of their statements. *See id.* As such, Sheffield has failed to carry his burden to present a prima facie case that CLEAT defamed him with the statements made by CLEAT staff.

**\*9** We sustain appellants' third issue with respect to the communications described in paragraphs 1, 2, and 3 above. The trial court erred if it concluded that Sheffield made a prima facie case of defamation with respect to the communications described in those three paragraphs.

## IV. Constitutional challenges

Sheffield contends that the TCPA is unconstitutional because its proof requirements unreasonably restrict his right of access to the courts for redress of his defamation claim and because the definition of the right to freely associate is vague and overbroad on its face or as applied.

### *Open courts*

The Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. To prove that the statute violates the open-courts provision, Sheffield must show that (1) a cognizable common-law cause of action is being restricted and (2) the restriction is unreasonable or arbitrary when balanced with the statute's purpose and basis. *Hebert v. Hopkins,* 395 S.W.3d 884, 901 (Tex.App.-Austin 2013, no pet.) (citing *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983)). Defamation is undisputedly a common-law cause of action. *Cf. Houston Livestock Show & Rodeo, Inc. v. Hamrick,* 125 S.W.3d 555, 583 (Tex.App.-Austin 2003, no pet.).

Sheffield argues that the open courts provision of the Texas Constitution guarantees, among other things, that (1) the Legislature cannot impede access to the courts through unreasonable financial barriers, and (2) meaningful remedies must be afforded so that the Legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress. *See Trinity River Auth. v. URS*

*Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994); *see also* Tex. Const. art. I, §§ 8, 13. "A statute or ordinance that unreasonably abridges a justiciable right to obtain redress for injuries caused by the wrongful acts of another amounts to a denial of due process under article I, section 13, and is, therefore, void." *Sax,* 648 S.W.2d at 665. A claim of unconstitutionality under the open courts provision will only succeed if the claimant (1) has a cognizable common-law cause of action being restricted by a statute, and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Id.* at 666. In applying this test, we consider both the statute's general purpose and the extent to which the claimant's right to bring a common-law cause of action is affected. *See id.*

Sheffield contends that the TCPA unreasonably restricts his ability to pursue his claim for defamation in the following ways: (1) provisions that purport to impose a higher standard of proof than would ordinarily be required for the plaintiff/respondent to prevail at trial; (2) unreasonable prohibitions, limitations or restrictions on discovery prior to the hearing on the motions to dismiss (particularly when coupled with the expedited notice/hearing requirements under the act); and (3) mandatory (non-discretionary) fee awards and sanctions upon dismissal. We will consider these in turn.

**\*10** **[11]** We find no provision in the TCPA that purports to impose a higher standard of proof than would be required at trial. If the defendant shows by a preponderance of the evidence that the legal action impinges on a specified right, the TCPA requires only that the claimant produce evidence that establishes a prima facie case. *See* Tex. Civ. Prac. & Rem.Code § 27.005(c). "A prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Rodriguez v. Printone Color Corp.,* 982 S.W.2d 69, 72 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (quoting *Rosales v. H.E. Butt Grocery Co.,* 905 S.W.2d 745, 748 (Tex.App.-San Antonio 1995, writ denied)). That standard does not increase the burden of proof. The characterization of the evidence needed to support the prima facie case as "clear and specific" does not alter the burden or cause it to exceed a preponderance of the evidence. This TCPA motion-to-dismiss process imposes a burden to produce evidence almost certainly sooner than a typical trial, but so do the summary-judgment processes. *See* Tex.R. Civ. P. 166a. Sheffield has not shown that the TCPA requires a higher standard of proof, much less one that violates the open-courts provision of the Texas constitution.

**[12]** Sheffield also attacks the restrictions on discovery during the pendency of the motions to dismiss. Motions to dismiss under the TCPA must be filed, heard, and ruled upon within 120 days of the service of the lawsuit, with some leeway upon a showing of good cause by the party (for the motion) or the court (for holding a hearing). The motions to dismiss under the TCPA must be filed no later than the sixtieth day after the action was served, unless the court extends the time to file a motion on a showing of good cause. Tex. Civ. Prac. & Rem.Code § 27.003(b). The hearing must be held not later than thirty days after the motion was served unless the court's docket requires a later hearing. *Id.* § 27.004. The court must rule no later than thirty days after the hearing. *Id.* § 27.005(a). The filing of a motion to dismiss under the TCPA automatically stays all discovery. *Id.* § 27.003(c). The stay may be lifted—on motion by a party or the court and a showing of good cause—to permit specific and limited discovery relevant to the dismissal motion. *Id.* § 27.006(b).

Sheffield has not shown that these restrictions are unreasonable. The TCPA's express purpose is to balance protections for persons exercising their constitutional rights of expression and association with those of persons filing meritorious lawsuits for demonstrable injury. *Id.* § 27.002. The provisions staying discovery are tempered by provisions permitting discovery upon a showing of good cause. These provisions can curtail potentially costly discovery in a possibly meritless case, thus serving the TCPA's goal of keeping litigation from being used to chill the exercise of constitutional rights, but can permit discovery upon a showing of good cause. They do not on their face violate the open-courts provision. Our review of the case on appeal does not reveal how the stay of discovery as applied here prevented Sheffield from establishing a prima facie case through clear and specific evidence and violated the constitution.

**\*11** **[13]** Finally, Sheffield has not shown that fees awards are mandatory under the TCPA, much less that they violate the open-courts provision. The fees provisions are as follows:

If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:

(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the

party who brought the legal action from bringing similar actions described in this chapter.

*Id.* § 27.009(a). While the introductory language of subsection (a) uses the seemingly mandatory term "shall award," the subsequent language tempers the conditions for making an award with discretionary terms like "justice" and "equity" and "sufficient to deter." *Id.* A trial court may decide that justice and equity do not require that costs, fees, or expenses be awarded and may determine that no sanctions are needed to deter the plaintiff from bringing similar actions. These provisions do not mandate an award and do not violate the open-courts guarantees on their face. As no fees were awarded, the provisions as applied here did not violate the open-courts provisions.

### *Vagueness and overbreadth*

 **[14]**  Sheffield attacks the TCPA's definition that the exercise of the right of association encompasses "a communication between individuals who join together to express, promote, pursue or defend common interests." Tex. Civ. Prac. & Rem.Code § 27.001(2). He complains that this definition exceeds the actual constitutional right, is overbroad facially and/or as applied, and is unconstitutionally vague because it could encompass all communications or activities of any group. He cites no authority in support of his argument as required. *See* Tex.R.App. P. 38.1(I), 38.2(a).

We note first that the TCPA's relationship to First Amendment protections is somewhat unusual. In relevant part, the First Amendment prohibits the government from making laws abridging freedom of speech or the right of the people to peaceably assemble. *See* U.S. Const. amend. I. The TCPA attempts to shield people exercising certain rights protected by the First Amendment not from governmental restriction, but from meritless civil claims. *See* Tex. Civ. Prac. & Rem.Code §§ 27.002, .005. Rather than imposing a governmental limit on speech or association, the TCPA places preliminary proof requirements on parties to litigation concerning the results of the exercise of those rights.

Because of the nature of the relationship between the TCPA and the First Amendment, Sheffield's complaint that the definition of the right of association is too broad assumes an unusual posture. A statute is considered impermissibly overbroad only if, in addition to constitutionally proscribed activities, it restricts speech or conduct protected by the First Amendment. *Walker v. State,* 222 S.W.3d 707, 713 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd). In other

words, an overbroad statute improperly *limits* protected freedoms. *Cf. id.* In this case, however, Sheffield complains that the statutory "definition exceeds the scope of the Constitutional right of association"—that is, that the statute provides more protection for freedom of association than the constitution does. We do not find support for the proposition that a statute that provides extra protection for a right violates the constitutional provision guaranteeing that right. *See Marquez v. State,* 725 S.W.2d 217, 243 (Tex.Crim.App.1987) ("[I]t is by now axiomatic that the federal constitution provides only a minimum standard of protection to be afforded citizens of the several states and the states are free to provide greater protection by constitution or statute.")

 **\*12**  Also, the challenged definition of the exercise of the right of association is not unconstitutionally vague. Sheffield complains that the TCPA's definition of the exercise of the right of free association "could literally encompass all communications or activities of any corporation, partnership, joint venture, limited liability company, organization agency, association or group." A statute is void for vagueness if it (1) fails to give a person of ordinary intelligence fair notice of the conduct prohibited or (2) is so indefinite that it encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *see also Clark v. State,* 665 S.W.2d 476, 482 (Tex.Crim.App.1984). To be void for vagueness, a statute must be so vague and indefinite as really to be no standard at all. *Jones v. City of Lubbock,* 727 F.2d 364, 373 (5th Cir.1984). We note initially that the TCPA does not prohibit any activity. Sheffield argues that the plain language of the statute may invite an interpretation that it applies to an extremely broad right to association, but that does not render the TCPA's definition improperly vague. The legislature's choice to require a preliminary substantiation of legal actions relating to a broad range of organizational communications does not create difficulty in determining whether or how it applies. We need not determine the outer constitutional limits of the TCPA, only whether the TCPA's terms are permissible as applied to the statements at issue in this case, each of which generally relate to CLEAT's internal affairs which are a common interest among CLEAT's members. The TCPA's definition of the exercise of free association is not unconstitutionally overbroad or void for vagueness as Sheffield contends.

### V. Attorney's fees

Appellants urge by their fourth issues that the trial court erred by failing to award them attorney's fees. As this is an interlocutory appeal and we have reversed some aspects of the trial court's denial of appellants' motions to dismiss, affirmed other aspects, and determined that the attorney's fees provisions are not mandatory, we conclude that the trial court should consider whether attorney's fees are warranted when it resumes its consideration of this case. Our resolution of the first three issues has rendered our consideration of appellants' fourth issues moot.

**CONCLUSION**

We affirm the trial court's denial of the motions to dismiss Sheffield's claims that CLEAT defamed him through John Curtis's statements in numbered paragraphs 4 and 5 set out in section I of the Discussion above. We find that appellants did not make the required showing under the TCPA that those claims are within the scope of the exercise of appellants' right of association, which was the only constitutional basis for Sheffield's objection preserved for appeal.

We reverse the trial court's denial of the motions to dismiss Sheffield's claim that Burpo and other CLEAT employees defamed him in the statements described in numbered paragraphs 1, 2, and 3 set out in section I of the Discussion above—namely, the January 4 email to CLEAT board and staff and alleged statements to Mike Staff and Luis Dovalina. We conclude that Sheffield did not make the required prima facie showing under the TCPA on each element of his defamation claims relating to the statements in paragraphs 1, 2 and 3, and we dismiss those claims.

**\*13** We reject Sheffield's arguments that the TCPA is unconstitutional and return the issue of costs and attorney's fees to the trial court. The case may proceed in the trial court consistent with our resolution of these issues on interlocutory appeal. The stay of discovery imposed by this Court's order dated February 26, 2013, will expire on the same date as this Court's plenary power over this appeal expires.

---

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.

438 S.W.3d 847
Court of Appeals of Texas,
Houston (1st Dist.).

Bruce I. SCHIMMEL, Appellant

v.

Gary McGREGOR, Teri McGregor, Kris
Hall, Soledad Pineda, Larry Bishop,
Cynthia Bishop, George Clark, Deborah
Clark, and Carol Severance, Appellees.

No. 01–13–00721–CV. | July 10, 2014.
| Rehearing Overruled Sept. 18, 2014.

**Synopsis**
**Background:** Homeowners sued homeowners' association's attorney for tortious interference with prospective business relations in connection with the sale of their respective beachfront properties to city. Attorney moved to dismiss under Texas Citizens Participation Act (TCPA). The 113th District Court, Harris County, denied motion. Attorney appealed.

**Holdings:** The Court of Appeals, Evelyn V. Keyes, J., held that:

[1] motion was timely filed;

[2] attorney's statements did not come within "commercial speech" exemption from application of Act;

[3] attorney's statements were "matters of public concern," supporting motion to dismiss;

[4] homeowners failed to establish a prima facie case on their claim;

[5] remand on issue of attorney fees was warranted.

Reversed and remanded.

West Headnotes (12)

**[1]** **Pleading**

👈 Application and proceedings thereon

A "prima facie case" within meaning of Texas Citizens Participation Act (TCPA) prohibiting dismissal if plaintiff establishes by clear and specific evidence a prima facie case for each essential element represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true. V.T.C.A., Civil Practice & Remedies Code § 27.005(c).

1 Cases that cite this headnote

**[2]** **Pleading**

👈 Application and proceedings thereon

Although attorney filed his motion to dismiss homeowners' tortious interference lawsuit, under Texas Citizens Participation Act (TCPA), one day late, in making a statement concerning the timeliness of the motion, trial court implicitly ruled that if attorney technically filed the motion late he had good cause for the late filing, therefore, motion was timely filed. V.T.C.A. Civil Practice and Remedies Code § 27.003(b).

Cases that cite this headnote

**[3]** **Pleading**

👈 Frivolous pleading

Statements allegedly made by attorney to city, which homeowners alleged tortiously induced city to back out of its agreements to purchase homeowners' properties, did not arises out of the sale or lease of goods, services, or an insurance product, or a commercial transaction, as required to come within commercial speech exception to application of Texas Citizens Participation Act (TCPA); when attorney made the statements he was undisputedly working as an attorney for homeowners association, attorney did not represent the city, nor was the city a "potential buyer or customer" of his legal services. V.T.C.A. Civil Practice and Remedies Code § 27.010(b).

1 Cases that cite this headnote

**[4]** **Pleading**

 Frivolous pleading

Statements of homeowners' association's attorney, forming basis of homeowners' action for tortious interference with sale of their respective beachfront properties to city, were "matters of public concern," supporting attorney's motion to dismiss under Texas Citizens Participation Act (TCPA); challenged statements, regardless of to whom the statements were made, were related to the dispute between homeowners and association about city's purchase of properties, and were made "in connection with an issue under consideration or review" by the city and the Texas Department of Public Safety. V.T.C.A. Civil Practice and Remedies Code § 27.001(7).

Cases that cite this headnote

**[5]    Pleading**
 Application and proceedings thereon

Attorney's affidavits, in support of his motion under Texas Citizens Participation Act (TCPA), stating that he was "personally acquainted with facts stated therein," instead of stating that they were based on personal knowledge, were, nonetheless, competent and admissible.

Cases that cite this headnote

**[6]    Torts**
 Prospective advantage, contract or relations; expectancy

To prevail on a claim for tortious interference with prospective business relations, the plaintiffs must establish that (1) a reasonable probability existed that the plaintiffs would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiffs injury; and (5) the plaintiffs suffered actual damage or loss as a result.

Cases that cite this headnote

**[7]    Torts**
 Improper means; wrongful, tortious or illegal conduct

Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations.

Cases that cite this headnote

**[8]    Pleading**
 Frivolous pleading

**Pleading**
 Application and proceedings thereon

**Torts**
 Attorneys

Homeowners' conclusory statements, unsupported by any facts, that actions of homeowner associations' attorney caused city to fail to close on the purchases of their properties, did not establish, by clear and specific evidence, a prima facie case on the essential element of causation, as required to prevail on a claim for tortious interference with prospective business relations, and, therefore, trial court erroneously denied attorney's motion to dismiss under Texas Citizens Participation Act (TCPA); even if attorney had induced the city not to close on the purchase of the properties, the homeowners would have no cause of action against him for inducing city to do that which it had a right to do, which was not to purchase the homeowners' properties. V.T.C.A., Civil Practice & Remedies Code § 27.005(b, c).

1 Cases that cite this headnote

**[9]    Torts**
 Contracts

Merely inducing a contract obligor to do what it has a right to do is not actionable interference.

Cases that cite this headnote

**[10]    Appeal and Error**
 Ordering New Trial, and Directing Further Proceedings in Lower Court

When an appellate court determines that the trial court erroneously denied a defendant's motion to dismiss under the Texas Citizens Participation Act (TCPA), the appropriate disposition of the case is to reverse the trial court's denial of the motion and remand for the trial court to conduct further proceedings to determine damages and costs and to order dismissal of the suit. V.T.C.A., Civil Practice & Remedies Code § 27.009(a)(1).

1 Cases that cite this headnote

**[11]  Costs**
  👉 Evidence as to items

Proof of attorney's fees should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked.

Cases that cite this headnote

**[12]  Appeal and Error**
  👉 Ordering new trial of certain issues only

Remand for further proceedings on issue of amount of attorney fees was warranted, given that appellant was entitled to attorney fees and costs by establishing his entitlement to dismissal of tortious interference with prospective business relations suit under Texas Citizens Participation Act (TCPA). V.T.C.A., Civil Practice & Remedies Code § 27.009(a)(1).

Cases that cite this headnote

**Attorneys and Law Firms**

 **\*849**  Daniel Goldberg, Houston, TX, for Appellant.

Wayne H. Paris, Paris Law Group, PLLC, Houston, TX, for Appellees.

Panel consists of Justices KEYES, BLAND, and BROWN.

**OPINION**

EVELYN V. KEYES, Justice.

In this interlocutory appeal, appellees Gary McGregor, Teri McGregor, Kris Hall, Soledad Pineda, Larry Bishop, Cynthia Bishop, George Clark, Deborah Clark, and Carol Severance (collectively, "the Buy–Out Owners"), sued Bruce Schimmel, an attorney hired by The Sands of Kahala Beach HOA, Inc. ("SOKB"), the homeowners' association for the subdivision in which the Buy–Out Owners lived, for tortious interference with prospective business relations, specifically, the sale of their respective beachfront properties to the City of Galveston. Schimmel moved to dismiss the Buy–Out Owners' tortious interference claim pursuant to the Texas Citizens Participation Act ("TCPA"). [1] The trial court denied Schimmel's motion to dismiss. In two issues, Schimmel contends that the trial court erroneously (1) found that Schimmel's complained-of actions did not involve "matters of public concern" and did not implicate the exercise of his right to petition, right of free speech, or right of association and thus erroneously denied his motion to dismiss; and (2) refused to award Schimmel court costs, reasonable attorney's fees, and other expenses incurred in defending the action against him.

1  *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 27.001–.011 (Vernon Supp.2013).

We reverse and remand for further proceedings.

**Background**

The Buy–Out Owners all own beachfront property in the Sands of Kahala Beach, a small, gated subdivision located on Galveston Island. In September 2008, Hurricane Ike made landfall in the region and caused extensive property damage to numerous homes, including those of the Buy–Out Owners. Because their homes were allegedly more than fifty percent damaged, the Buy–Out Owners sought to sell their properties to the City of Galveston under a Federal Emergency Management Agency ("FEMA") program called the Hazard Mitigation Grant Program ("HMGP"). The Texas Department of Public Safety assists in administering this program. The Buy–Out Owners and an attorney for the City of Galveston signed agreements in September 2009 concerning the purchase of the respective properties.

SOKB and the remaining owners who owned property in the subdivision but did not wish to sell their property to the City of Galveston ("the Remaining Owners") opposed the Buy–Out Owners' plans to sell. Under the HMGP, the properties that the City of Galveston purchased "were to be kept as open space in perpetuity." **\*850** This requirement concerned the SOKB, the entity in charge of collecting assessments and fees from the property owners within the subdivision, and the Remaining Owners, who believed that the required public use of the purchased land and the loss of a private roadway and utility easement would cause the value of their properties to drop.

Due to the dispute between the Buy–Out Owners, SOKB, and the Remaining Owners, in October 2009, the City of Galveston added a condition to the purchase of the Buy–Out Owners' properties: the president of SOKB's Board of Directors ("the Board") needed to sign a document releasing the City from paying future homeowners' dues and other fees and assessments to SOKB once it purchased the properties. In December 2009, SOKB hired Schimmel, an attorney, to represent its interests and those of the Remaining Owners in the dispute with the Buy–Out Owners. SOKB refused to sign the releases and the Board voted to amend SOKB's by-laws to raise the voting requirement to remove directors from the Board, purportedly on Schimmel's advice. The Buy–Out Owners subsequently held a special meeting of the Board and elected new directors, including Kris Hall, one of the appellees, as the new President. Hall then signed the releases for the Buy–Out Owners' properties and delivered them to the City of Galveston.

Schimmel continued to work on behalf of SOKB and the Remaining Owners to convince the City of Galveston not to buy the Buy–Out Owners' properties until February 1, 2011, when he withdrew from representation. Ultimately, the time period to participate in the HMGP expired without the City of Galveston's having closed on the purchases of the Buy–Out Owners' properties.

The Buy–Out Owners, joined by SOKB, sued Schimmel on January 28, 2013, asserting claims for breach of fiduciary duty and equitable fee forfeiture. Neither of those claims is at issue in this interlocutory appeal.

On March 28, 2013, the Buy–Out Owners and SOKB filed their first amended petition. In addition to the breach of fiduciary duty and fee forfeiture claims, the Buy–Out Owners asserted a claim against Schimmel for tortious interference

with prospective business relations.[2] The Buy–Out Owners alleged that a reasonable probability existed that they would have entered into a business relationship with the City of Galveston, that Schimmel intentionally interfered with the relationship, and that Schimmel's conduct was independently tortious and unlawful "in that Defendant Schimmel made fraudulent statements about these Plaintiffs to third parties and persuaded others to illegally boycott these Plaintiffs."

[2]    SOKB did not join the homeowners in asserting this claim against Schimmel, and SOKB is not a party to this appeal, which concerns only the Buy–Out Owners' tortious interference claim.

The Buy–Out Owners alleged that Schimmel made several misrepresentations that interfered with the purchase of their properties by the City of Galveston. For example, in response to an article in the Houston Chronicle about the potential sale of the properties, Schimmel allegedly wrote to the author of the article and stated that if the City purchased the properties the Remaining Owners would lose their access to a nearby state highway because the private road in the subdivision would be demolished. He also allegedly misrepresented to the author that all of the properties were behind the vegetation line and "repairable for less than 50% of **\*851** their value," which would preclude them from participation in the HMGP. Schimmel also allegedly made misrepresentations to the Board concerning how the HMGP's definition of "substantial damage" to the properties was calculated;[3] to lot owners in the subdivision that the buyout would not include the opportunity to buy out all of the properties in the subdivision; and to various individuals that he "had no intention of changing any more By–Laws," that the SOKB had been working with the Buy–Out Owners to settle the dispute, and that developers no longer owned lots in the subdivision, even though they did.

[3]    The Buy–Out Owners alleged that Schimmel told the Board that "the definition of Substantial Damage is damages that total at least 50% of the pre-event fair value of the property," but he allegedly knew that the fair market value of the property was based on the local appraisal district's value for the structure, which did not include the value of the land. According to the Buy–Out Owners, "This is a significant distinction which the BOD later misrepresented to FEMA when they alleged false damage estimates."

The Buy–Out Owners also alleged that Schimmel had "systematically excluded members from voting [at resident

meetings] in order to boycott the Buyout owners," such as by quickly setting a voting eligibility date to prevent owners who had not paid their annual assessments from voting at meetings and by recommending the elimination of voting by proxy, which would affect the Buy–Out Owners who used their properties as vacation homes but did not live permanently in the subdivision. The Buy–Out Owners further alleged that Schimmel had stated that neither SOKB nor its Board had the power to waive assessments as required by the City of Galveston to purchase the properties, and "[w]ithout releases, the [City] would not close on the properties and [Schimmel] had the [Board] refuse to sign [the] release[s] which was an unreasonable restraint or alienation. Defendant Schimmel's position was that the Buy-[O]ut owners would not be allowed to sell to the [City] under any circumstances." The Buy–Out Owners alleged that they had suffered economic damages consisting of the difference between the proposed buy-out values and the market values of their properties.

On May 28, 2013, Schimmel filed a motion to dismiss under the TCPA. In this motion, Schimmel stated that the Buy–Out Owners served him with their first amended petition on March 28, 2013, and that this motion to dismiss addressed only the tortious interference claim raised for the first time in that amended petition.

Schimmel stated that he advised the Board and the Remaining Owners that he thought the issue concerning the value of the repairs to the Buy–Out Owners' properties, which was relevant to their eligibility to participate in the HMGP, was "a matter between [the Buy–Out Owners] and governmental agencies" and should not be pursued by SOKB, "but that if any lot owner wanted to pursue that issue on his or her own, it would aid [SOKB] by distracting [the Buy–Out Owners]." Schimmel argued that the TCPA protected these statements because they involved his right of association and right to petition regarding a matter of public concern. He argued that his statements to the Houston Chronicle reporter were "a 'communication' which is 'an exercise of the right of free speech' and related to an exercise of the right of petition" and were made "in connection with a matter of public concern" because the statements related to the expenditure of government money and "interference with the community of the Subdivision and economic concerns." He asserted that those statements were also "reasonably likely to encourage consideration or review **\*852** of an issue by" an executive or other governmental body or were "reasonably likely to enlist public participation in an effort to effect consideration of an issue by" an executive or other governmental body.

With respect to his alleged statements to the Board, Schimmel argued that those statements were "an exercise of the right of association" and thus were entitled to protection under the TCPA.

Schimmel also argued that he was entitled to mandatory court costs, reasonable attorney's fees, and other expenses incurred in defending the claim pursuant to Civil Practice and Remedies Code section 27.009(a). Schimmel attached an affidavit setting out the amount of attorney's fees he had incurred in defending against the Buy–Out Owners' claims. This affidavit set out the billing rate, the date tasks were performed, the hours spent, and a description of the tasks completed.

Schimmel attached numerous exhibits to his motion to dismiss. One of these exhibits was an order of dismissal in a suit filed by the Buy–Out Owners in the Southern District of Texas against the City of Galveston and several Department of Public Safety officials involved in the administration of the HMGP. The Buy–Out Owners had raised claims under the Fourteenth Amendment and Section 1983, [4] arguing that the City of Galveston's failure to close on the purchase of their properties deprived them of funds under the HMGP without due process of law. The district court granted the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and, in its order, noted that state agencies involved with administering the HMGP have "wide discretion in administering the program." The court stated, "Nothing in the regulations [governing the HMGP] dictates that qualified property owners are entitled to participate in the program or limits the State's discretion in determining a property owner's qualifications for the program or reviewing those qualifications at any time in the process." The court concluded that the Buy–Out Owners "have no entitlement to HMGP funds or a property right to such funds" and ultimately dismissed their suit.

4      *See* 42 U.S.C. § 1983 (2006) (providing civil cause of action for deprivation of rights).

In response to Schimmel's motion to dismiss, the Buy–Out Owners argued that their claim fell within a statutory exemption to the TCPA because Schimmel was engaged in the business of selling his legal services, he was paid to render legal services by SOKB and the Remaining Owners, and his conduct at issue in the suit occurred while he was rendering legal services. The Buy–Out Owners also argued that Schimmel had not timely filed his motion to dismiss

because the TCPA required such motions to be filed not later than the sixtieth day after service of the legal action and Schimmel filed his motion to dismiss on the sixty-first day after the homeowners served him with their amended petition.

The Buy–Out Owners further stated,

> The individual Plaintiffs['] claims are not based on, related to, or in response to a right of Schimmel to voice free speech, have a right of association or a right to petition. It is totally about his tortious interference with Plaintiffs' prospective business and contractual relations which caused the individual Plaintiffs money damages. Plaintiffs' claims are based upon the independent torts of fraud, misrepresentations and illegal boycott.

They further argued, "Schimmel's conduct is at issue here, not anyone's free speech, right to associate, or to file a lawsuit." The Buy–Out Owners also challenged the affidavits that Schimmel had submitted **\*853** with his motion to dismiss on the ground that Schimmel stated that he is "personally acquainted with the facts stated herein, except where I state that I am testifying on information and belief, in which case I am testifying based on information and my belief thereof." The Buy–Out Owners argued that these affidavits did not constitute competent evidence because "personal acquaintance" is not "personal knowledge." The homeowners also challenged Schimmel's attorney's fees affidavit on the ground that it did not meet the requirements for establishing reasonable and necessary attorney's fees as set out by the Texas Supreme Court in *El Apple I, Ltd. v. Olivas.*

The Buy–Out Owners attached their own affidavits to their response and argued that these affidavits established a prima facie case for tortious interference with prospective business relations.[5] The affidavits were substantively identical. The affidavits set out numerous representations allegedly made by Schimmel that, according to the Buy–Out Owners, caused the City of Galveston to fail to purchase their properties. As an example, Kris Hall, one of the Buy–Out Owners, averred:

5   Although the Buy–Out Owners pleaded a claim for tortious interference with prospective relations, the Buy–Out Owners admit in their affidavits submitted in opposition to Schimmel's motion to dismiss that they had

signed contracts with the City of Galveston to purchase the properties for specified amounts.

> But for Schimmel's misrepresentations and conduct there is a reasonable probability that all of our buy-out contracts would have closed.... Schimmel's independent misrepresentations and boycott, set out above, prevented our agreements from closing and the purchase of our property by the [City]. Schimmel's acts, set out above, were done with a conscious desire to prevent our sales and purchases from occurring. I, as well as the other Buy–Out Owners, have suffered actual damages as a result of this interference of Schimmel. We have incurred thousands of dollars in legal fees and have lost the difference between the buy-out values that we were to be paid and the lesser amounts that our properties now are valued at. There was a reasonable probability that I, as well as the rest of the Buy–Out Owners, would have entered into a business relationship and closed our contracts with the [City].
>
> The Buy–Out Owners did not attach affidavits from attorneys with the City of Galveston or from personnel with the Department of Public Safety, which assisted in administering the HMGP, nor did they attach any other evidence from persons involved with the City's decision not to close on the purchase of the Buy–Out Owners' properties.

Schimmel filed a reply and asserted that he had timely filed his motion to dismiss. He argued that although the Buy–Out Owners filed their amended petition with the trial court on March 28, 2013, the Buy–Out Owners did not serve him with a copy of the petition. He did not see a copy of the petition until April 1, when a legal assistant to his attorney in the case downloaded the petition from the ProDoc eFiling service. In the alternative, Schimmel moved the trial court to allow late filing of the motion to dismiss, as is permitted by the TCPA. Schimmel also argued that the Buy–Out Owners' supporting affidavits were conclusory and not supported by evidence that a reasonable probability existed that their buy-out contracts with the City of Galveston would have closed but for Schimmel's allegedly tortious actions. He further argued that the Buy–Out Owners did not provide "any evidence that any act of Schimmel's caused the [Texas Department **\*854** of Public Safety] to order the City not to close the alleged contracts."

After an oral hearing, the trial court issued an order denying Schimmel's motion to dismiss. The order stated:

> The parties announced on the record their stipulation that the Motion relates only to the Plaintiffs' cause of action

for damages resulting from an alleged tortious interference with a prospective relationship between Plaintiffs and the City of Galveston....

The Court finds that the Motion was timely filed.

The Court finds that the docket conditions in the court prevented the scheduling of the hearing on the Motion within 30 days following the date of its filing.

The Court finds that the Plaintiffs' tortious interference claim does not affect Schimmel's right to participate in government.

The Court finds that Schimmel's actions alleged as the basis of the tortious interference claim concerned matters disputed between individual parties, and the statements alleged as a basis of the claim were not made in connection with a matter of public concern.

The Court finds that Schimmel's actions alleged as the basis of the tortious interference claim were not a part of Schimmel's exercise of the right of association defined in TEX. CIV. PRACT. & REM.CODE § 27.001(2).

The Court finds that Schimmel's actions alleged as the basis of the tortious interference claim do not concern Schimmel's right to petition defined in TEX. CIV. PRACT. & REM.CODE § 27.001(4).

The Court finds that the tortious interference claim was not brought to deter or prevent Schimmel's exercise of his constitutional rights, for an improper purpose, for harassment, to cause unnecessary delay, or to increase litigation costs.

The trial court did not award attorney's fees or costs to either party. This interlocutory appeal followed.

### Texas Citizens Participation Act

In his first issue, Schimmel contends that the trial court erroneously determined that his communications that are the basis of the Buy–Out Owners' tortious interference claim did not involve "matters of public concern" and did not implicate his "exercise of the right to petition," "exercise of the right of free speech," or "exercise of the right of association."

#### A. *Standard of Review and Applicable Law*

In enacting the TCPA, the Legislature stated that the purpose of the statute "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM.CODE ANN. § 27.002 (Vernon Supp.2013); *KTRK Television, Inc. v. Robinson,* 409 S.W.3d 682, 688 (Tex.App.-Houston [1st Dist.] 2013, pet. denied). The TCPA created "an avenue at the early stage of litigation for dismissing unmeritorious suits that are based on the defendant's exercise" of certain constitutional rights. *In re Lipsky,* 411 S.W.3d 530, 539 (Tex.App.-Fort Worth 2013, orig. proceeding). The Legislature has directed courts to construe the statute liberally "to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM.CODE ANN. § 27.011(b) (Vernon Supp.2013); *Robinson,* 409 S.W.3d at 688.

Under the TCPA, if a party files a legal action that is "based on, relates to, or is in response to" the defendant's exercise of **\*855** the right of free speech, right to petition, or right of association, the defendant may file a motion to dismiss the action. TEX. CIV. PRAC. & REM.CODE ANN. § 27.003(a) (Vernon Supp.2013). The TCPA statutorily defines "exercise of the right of association," "exercise of the right of free speech," and "exercise of the right to petition." *See id.* § 27.001(2)-(4) (Vernon Supp.2013). The TCPA defines "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). "Communication" is further defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Matter of public concern" includes issues relating to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). The statutory definition of "exercise of the right to petition" includes, among other things, "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *Id.* § 27.001(4)(B).

A party filing a motion to dismiss under the TCPA must file the motion "not later than the 60th day after the date of service of the legal action." *Id.* § 27.003(b). The trial court may extend the time to file a motion to dismiss upon a showing of good cause. *Id.*

When deciding whether to grant a motion to dismiss a lawsuit pursuit to the TCPA, the trial court must "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a) (Vernon Supp.2013); *Robinson,* 409 S.W.3d at 688. The court must determine, after a hearing, whether the moving defendant has demonstrated by a preponderance of the evidence that the legal action is "based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association." TEX. CIV. PRAC. & REM.CODE ANN. § 27.005(b) (Vernon Supp.2013); *Robinson,* 409 S.W.3d at 688. We review de novo the trial court's determination whether the defendant carried this burden. *Robinson,* 409 S.W.3d at 688.

 **[1]**   If the trial court determines that the defendant has met his burden, the burden then shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM.CODE ANN. § 27.005(c); *Robinson,* 409 S.W.3d at 688. The Legislature's use of "prima facie case" in the second step of the inquiry implies a minimal factual burden: "[a] prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Robinson,* 409 S.W.3d at 688; *Rodriguez v. Printone Color Corp.,* 982 S.W.2d 69, 72 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The statute requires that the plaintiff's proof address and support each "essential element" of every claim and that the proof constitute "clear and specific evidence." *Robinson,* 409 S.W.3d at 688. Because the statute does not define "clear and specific," we apply the ordinary meaning of these terms. *Id.* at 689. "Clear" means "unambiguous," "sure," or "free from doubt," and "specific" means "explicit" or "relating to a particular named thing." *Id.* We review the pleadings and evidence in the light **\*856** most favorable to the plaintiffs. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71, 80–81 (Tex.App.-Houston [1st Dist.] 2013, pet. denied). Accordingly, here, if we determine that Schimmel carried his initial burden of proof, we must examine the pleadings and the evidence presented in response to Schimmel's motion to dismiss to determine whether the Buy–Out Owners marshaled "clear and specific" evidence to support each element of their tortious interference claim. *See Robinson,* 409 S.W.3d at 689.

### B. Applicability of TCPA to the Buy–Out Owners' Claim

#### 1. Timeliness of Motion to Dismiss

The Buy–Out Owners argue that this Court should affirm the trial court's ruling denying Schimmel's motion to dismiss on the basis that he did not timely file the motion.

Section 27.003(b) provides that a party filing a motion to dismiss must file the motion "not later than the 60th day after the date of service of the legal action." TEX. CIV. PRAC. & REM.CODE ANN. § 27.003(b). The statute further provides, however, that the trial court may extend the time to file a motion to dismiss "on a showing of good cause." *Id.; see also Newspaper Holdings,* 416 S.W.3d at 79 ("The TCPA sets strict deadlines for filing, hearing, and ruling on a motion to dismiss. Absent a showing of good cause, the defendant must move to dismiss pursuant to the TCPA 'not later than the 60th day after the date of service of the legal action.' ").

 **[2]**   Here, the Buy–Out Owners' first amended petition, which was the first pleading in which the Buy–Out Owners raised the tortious interference claim against Schimmel, bears a file-stamped date of March 28, 2013. Schimmel filed his motion to dismiss on May 28, 2013, sixty-one days later. In his initial motion to dismiss, Schimmel stated, "On March 28, 2013, Plaintiffs served Schimmel with their Plaintiffs' Amended Petition, in which, for the first time, Natural Plaintiffs added a separate cause of action against Schimmel alleging tortious interference with prospective relations."

In response to the motion to dismiss, the Buy–Out Owners argued that the motion was untimely because Schimmel filed his motion on the sixty-first day after he had been served with the action and he could not demonstrate that good cause existed for his late filing. In reply, Schimmel asserted that his motion was not untimely because, although he received notice that the first amended petition had been filed on March 28, 2013, the Buy–Out Owners did not serve him with a copy of the petition on that date. Instead, he did not receive a copy of the petition until April 1, 2013, when his counsel's legal assistant downloaded the amended petition from the ProDoc eFiling service. In the alternative, Schimmel sought leave of court to allow the late filing of his motion.

In the order ruling on the motion to dismiss, the trial court explicitly stated, "The Court finds that the Motion was timely filed." We conclude that, although Schimmel filed his motion to dismiss one day late, in making a statement concerning the timeliness of the motion, the trial court implicitly ruled that if Schimmel technically filed the motion late he had good cause for the late filing. We therefore decline to dismiss this suit on the ground that Schimmel did not timely file his motion to dismiss.

### 2. Applicability of Services Exclusion

The Buy–Out Owners also argue that the TCPA does not apply to this case because this case falls under the statutory **\*857** exemption for commercial speech found in section 27.010(b).

Section 27.010(b) states:

> [The TCPA] does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM.CODE ANN. § 27.010(b) (Vernon Supp.2013). The party asserting the exemption bears the burden of proving its applicability. *See Newspaper Holdings,* 416 S.W.3d at 89; *see also Pena v. Perel,* 417 S.W.3d 552, 555 (Tex.App.-El Paso 2013, no pet.) ("The burden of proving the applicability of an exemption under Section 27.010 is on the party asserting it.").

The Buy–Out Owners argue that their tortious interference claim falls within this exemption because (1) Schimmel was primarily engaged in the business of selling his legal services; (2) the Buy–Out Owners' cause of action arose from Schimmel's conduct consisting of representations of fact about Schimmel's services; (3) Schimmel's conduct occurred in the course of delivering his legal services; and (4) the intended audience of his conduct was a potential buyer, the City of Galveston. We disagree that Schimmel's conduct falls within this exemption.

The El Paso Court of Appeals addressed a similar situation in *Pena.* In that case, Pena, who had been indicted on two counts of intoxicated manslaughter and two counts of failure to stop and render aid, hired Dolph Quijano to represent him. *Pena,* 417 S.W.3d at 553. A jury ultimately convicted Pena, assessed punishment at confinement in the Texas Department of Criminal Justice, and imposed a total of $30,000 in fines. *Id.* at 553–54. Pena and his wife then began running advertisements that were critical of Quijano. *Id.* at 554. Quijano hired Bobby Perel to represent him, and Perel sent letters to local newspapers and to the Texas Board of Pardons and Paroles to inform it of Pena's conduct. *Id.* One of Perel's letters to the Board of Pardons and Paroles informed it that he believed Pena had not taken responsibility for his underlying criminal actions and that Pena was responsible for "vicious ads" attacking Quijano, and he requested that the Board consider this information when making decisions about Pena's parole. *Id.* Pena filed suit against Quijano and Perel, asserting, among other things, that they had conspired to slander and defame him by sending the letter to the Board. *Id.* The trial court granted Perel's motion to dismiss pursuant to the TCPA. *Id.*

On appeal, Pena argued that the trial court erred in dismissing his claims because his claims fell within the "commercial speech" exemption to the TCPA. *Id.* at 555. The El Paso Court of Appeals noted that Pena's suit was based on the letter that Perel had sent to the Board. *Id.* The court reasoned, "The letter does not arise out of the sale or lease of goods, services, or an insurance product or a commercial transaction. Further, the Board of Pardons and Parole is not an actual or potential buyer or customer of any goods or services sold by Perel." *Id.* The court held that Pena failed to establish the applicability of the exemption. *Id.*

**[3]** Here, Schimmel allegedly made statements that, according to the Buy–Out Owners, induced the City of Galveston to back out of its agreements to purchase the Buy–Out Owners' properties. When Schimmel made the statements at issue, he **\*858** was undisputedly working as an attorney for SOKB and the Remaining Owners. The ultimate intended audience for his statements, however, was the City of Galveston. Schimmel did not represent the City of Galveston, nor was the City a "potential buyer or customer" of Schimmel's legal services. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 27.010(b). We therefore conclude, as the El Paso Court of Appeals did in *Pena,* that the Buy–Out Owners have failed to establish the applicability of the "commercial speech" exemption. *See id.*; *see also Pena,*

417 S.W.3d at 555; *Newspaper Holdings,* 416 S.W.3d at 89 ("With respect to the newspaper, it is undisputed that NHI was in the business of reporting community events, but the Hotel's complained—of statements do not arise out of the lease or sale of the goods or services that NHI sells—newspapers.").

### 3. Whether the Buy–Out Owners' Claim Falls Under the TCPA

The Buy–Out Owners complain about numerous actions and statements allegedly made by Schimmel during the course of his representation of SOKB and the Remaining Owners. All of these statements, whether they were made to a journalist at the Houston Chronicle, attorneys with the City of Galveston, or members of the Board, concerned or were related to the City's plan to purchase the Buy–Out Owners' properties and were made to further Schimmel's clients' interest in ensuring that should the purchase of the properties go forward SOKB would receive compensation for the loss of future assessments on the purchased properties.

The TCPA defines "exercise of the right to petition" as including "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body ...." TEX. CIV. PRAC. & REM.CODE ANN. § 27.001(4)(B). The statute defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). And a "matter of public concern" is further defined as "an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace." *Id.* § 27.001(7). None of these statutory definitions includes a requirement that the communications be made to a particular individual or entity, such as a governmental body, to constitute protected conduct.

 **[4]**　SOKB and the Remaining Owners retained Schimmel to represent their interests during the dispute concerning the buy-out of the Buy–Out Owners' properties. All of Schimmel's challenged statements, regardless of to whom the statements were made, related to this dispute and were made "in connection with an issue under consideration or review" by the City of Galveston and the Texas Department of Public Safety, both of which are governmental bodies. *See id.* § 27.001(4)(B) (defining "exercise of the right to petition"). The Buy–Out Owners' action for tortious interference with prospective business relations is therefore "based on, relates

to, or is in response to" Schimmel's exercise of the right to petition on behalf of his clients. *See id.* § 27.003(a) (providing that defendant may move to dismiss legal action that is based on, relates to, or is in response to exercise of right to petition).

Moreover, the Buy–Out Owners' claim implicates not just Schimmel's exercise of the right to petition on behalf of his clients but also Schimmel's exercise of his right to freedom of speech on behalf of his clients. *See id.* § 27.001(3) (defining "exercise of the right of free speech" as "a communication made in connection with a matter of **\*859** public concern"); *id.* § 27.001(7) (defining "matter of public concern"). Contrary to the trial court's determination, in its order denying Schimmel's motion to dismiss, that the dispute at issue "concerned matters disputed between individual parties" and thus "were not made in connection with a matter of public concern," Schimmel's statements all related to and were made in connection with the purchase by the City of Galveston, a governmental entity, of five properties in a small subdivision, the purchase of which would allegedly damage the values of the neighboring properties and would damage the future revenue stream of SOKB, the homeowners' association, by denying it the ability to collect future assessments on the bought-out properties. In addition to relating to the government, the dispute at issue also relates to "economic or community well-being," all of which are issues included in the statutory definition of "matter of public concern" under the TCPA. *See id.* § 27.001(7).

In arguing that their claim is not based on, does not relate to, and is not in response to Schimmel's exercise of constitutionally protected rights, the Buy–Out Owners focus on the fact that their claims "are based upon the independent torts of fraud, misrepresentations and illegal boycott," which do not implicate constitutional protections. That argument, however, is relevant to the *second* step of the inquiry— whether the Buy–Out Owners have demonstrated a prima facie case for relief on every essential element of their tortious interference claim. *See In re Lipsky,* 411 S.W.3d at 543 ("But chapter 27 dictates that we should review evidence concerning whether [the defendants'] statements were defamatory and thus actionable in the second part of our review, in which [the plaintiff] has the burden of establishing 'by clear and specific evidence a prima facie case for each essential element of the claim in question.' ").

 **[5]**　The Buy–Out Owners also argue that Schimmel's affidavits supporting his motion to dismiss are incompetent and inadmissible because they state that he is "personally

acquainted with facts stated therein," instead of stating that they are based on personal knowledge, and that some portions state that Schimmel is testifying based on information and belief. We first note that, in making a determination on a motion to dismiss, the trial court is not limited to considering only supporting and opposing affidavits, but the court "shall consider the pleadings" as well. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 27.006(a). Thus, even if Schimmel's affidavits do not constitute competent and admissible evidence, his motion to dismiss does not necessarily fail. Secondly, we agree with Schimmel that there is no meaningful distinction between "personal knowledge" and "personal acquaintance," and to hold otherwise is to impose an unduly restrictive reading on the personal knowledge requirement for affidavits. *See* WEBSTER'S NEW COLLEGIATE DICTIONARY 8 (1956) (defining "acquaintance" as "[p]ersonal knowledge (of a person or thing) which results from becoming acquainted"). We therefore conclude that Schimmel's affidavits are competent and admissible to support his motion to dismiss.

We hold that Schimmel met his initial burden to show, by a preponderance of the evidence, that the Buy–Out Owners' claim is based on, relates to, or is in response to his exercise of the right to petition and his exercise of the right of free speech. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 27.005(b)(1)-(2).

### 4. Buy–Out Owners' Prima Facie Case

 **[6]**    **[7]**   Because we have held that Schimmel's statements forming the basis of the Buy–Out Owners' tortious interference **\*860** claim constitute protected conduct under the TCPA, we must now determine whether the Buy–Out Owners met their burden to establish, by clear and specific evidence, a prima facie case for every essential element of their tortious interference claim. *See id.* § 27.005(c). To prevail on a claim for tortious interference with prospective business relations, the plaintiffs must establish that (1) a reasonable probability existed that the plaintiffs would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiffs injury; and (5) the plaintiffs suffered actual damage or loss as a result. *See Coinmach*

*Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909, 923 (Tex.2013); *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex.2001) (holding that plaintiff must establish that defendant's conduct was independently tortious or wrongful, meaning that defendant's conduct "would be actionable under a recognized tort"). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations ...." *Sturges,* 52 S.W.3d at 726.

One of the essential elements for which the Buy–Out Owners had to establish a prima facie case is causation, that is, whether Schimmel's interference proximately caused their injury, which, in this case, is the City of Galveston's failure to close on the purchase of their properties. *See Coinmach Corp.,* 417 S.W.3d at 923 (listing causation as element of tortious interference with prospective relations claim). As evidence to support their contention that they are entitled to relief on their tortious interference claim, the Buy–Out Owners presented to the trial court identical affidavits from each property owner as well as copies of several e-mails between Schimmel and members of the Board. They did not present any affidavits or other admissible evidence from any individual at the City of Galveston, the city attorney's office, the Texas Department of Public Safety, which allegedly informed the City to put a hold on the transactions while officials conducted a new "substantial damage determination" of the Buy–Out Owners' properties, or any other official or agency with decision-making authority concerning the City's purchase of the properties. Instead, the only evidence of this element that the Buy–Out Owners produced is the statements in their identical affidavits that "[b]ut for Schimmel's misrepresentations and conduct there is a reasonable probability that all of our buy-out contracts would have closed," that "Schimmel's independent misrepresentations and boycott, set out above, prevented our agreements from closing and the purchase of our properties by the [City]," and that "Schimmel's action and conduct, set out above, caused me and the other Buy–Out Owners money losses ... that would not have occurred, but for [Schimmel's] conduct."

 **[8]**   We agree with Schimmel that the Buy–Out Owners presented only their conclusory statements, unsupported by any facts, that Schimmel's actions caused the City of Galveston to fail to close on the purchases. Evidence of Schimmel's conduct, by itself, is not evidence that, with respect to communications made to other individuals and entities, that conduct caused the City not to purchase the Buy–

Out Owners' properties. The fact that Schimmel's alleged conduct occurred roughly contemporaneously with the City of Galveston's and the Department of Public **\*861** Safety's consideration of whether to move forward with the purchases does not establish that Schimmel's conduct *caused* the governmental agencies to act as they did.

Furthermore, in October 2009, the City of Galveston required the Buy–Out Owners to obtain a release from future assessments, signed by SOKB, as a condition for the purchases to close, two months before SOKB and the Remaining Owners hired Schimmel to represent their interests. The Buy–Out Owners contend that Schimmel tortiously interfered with their prospective contracts with the City of Galveston because he urged the Board not to sign the required releases, and, as a result of the Board's refusal to sign the releases, the City did not proceed with the purchases. Ultimately, however, one of the appellees, Kris Hall, signed the releases on behalf of SOKB once he became president of the Board, but the City of Galveston did not close on the purchases.

Additionally, in the federal suit between the Buy–Out Owners and the City of Galveston and several Department of Public Safety employees the district court ruled that governmental entities have "wide discretion" in administering the HMGP and that nothing in the regulations governing the HMGP "dictates that qualified property owners are entitled to participate in the program or limits the State's discretion in determining a property owner's qualifications for the program or reviewing those qualifications at any time in the process." The court thus concluded that the Buy–Out Owners had no "entitlement to HMGP funds or a property right to such funds." Thus, a court has already determined during the litigation arising out of this dispute that the City of Galveston and the Department of Public Safety acted within their discretionary authority when they declined to close on the purchase of the Buy–Out Owners' properties.

 **[9]**   As the Texas Supreme Court has held, "merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997); *Newspaper Holdings,* 416 S.W.3d at 87. Even if Schimmel induced the City of Galveston and the Department of Public Safety not to close on the purchase of the Buy–Out Owners' properties, as the Buy–Out Owners allege, the Buy–Out Owners would have no cause of action against him for inducing the City or the

Department to do that which they had a right to do—not to purchase the Buy–Out Owners' houses.

We also note that, in this regard, the Buy–Out Owners have made no argument, with citation to authority, that SOKB and the Board were legally required or obligated to sign the releases that the City of Galveston required to close on the purchases, and they have produced no evidence on such a point. The Buy–Out Owners have thus presented no evidence that Schimmel induced the Board to take an action that it was not legally authorized to take. This is, therefore, not a situation in which Schimmel, as a corporate agent, induced the corporation, SOKB, to breach a contractual obligation. *See, e.g., Holloway v. Skinner,* 898 S.W.2d 793, 796 (Tex.1995) (noting that "a party cannot tortiously interfere with its own contract" and holding that even when corporate agent induces corporation to breach contractual obligation, agent will not be held liable for tortious interference with corporation's contract unless plaintiff can demonstrate that agent "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests").

 **\*862**  We conclude that the Buy–Out Owners' supporting evidence does not establish, by clear and specific evidence, a prima facie case on the essential element of causation. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 27.005(c) ("The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for *each essential element* of the claim in question.") (emphasis added); *Coinmach Corp.,* 417 S.W.3d at 923 (stating that interference as proximate cause of plaintiff's injury is essential element of tortious interference with prospective relations claim).

We therefore hold that because Schimmel established by a preponderance of the evidence that the Buy–Out Owners' tortious interference claim is based on, relates to, or is in response to his exercise of his right to petition on behalf of his clients and his right of free speech and because the Buy–Out Owners failed to establish a prima facie case on every essential element of their tortious interference claim, the trial court erroneously denied Schimmel's motion to dismiss under the TCPA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 27.005(b), (c).

We sustain Schimmel's first issue.

## Award of Costs and Attorney's Fees

In his second issue, Schimmel contends that because the trial court erroneously denied his motion to dismiss it also erroneously failed to award him mandatory costs, reasonable attorney's fees, and expenses incurred in defending against the claim, as required by the TCPA.

 **[10]** Section 27.009(a)(1) provides that if the court orders dismissal of a legal action pursuant to the TCPA, the court "shall award to the moving party court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." TEX. CIV. PRAC. & REM.CODE ANN. § 27.009(a)(1) (Vernon Supp.2013). When an appellate court determines that the trial court erroneously denied a defendant's motion to dismiss under the TCPA, the appropriate disposition of the case is to reverse the trial court's denial of the motion and remand for the trial court to conduct further proceedings pursuant to section 27.009(a) and to order dismissal of the suit. *See Newspaper Holdings,* 416 S.W.3d at 90.

The Buy–Out Owners contend that, even if the trial court erroneously denied Schimmel's motion to dismiss, remand is not appropriate in this case because Schimmel's affidavit on attorney's fees was "incompetent evidence of reasonableness and necessity" under the Texas Supreme Court's decision in *El Apple I, Ltd. v. Olivas*.

*Olivas* involved a claim for sex discrimination and retaliation pursuant to the Texas Commission on Human Rights Act, under which courts calculate attorney's fees using the lodestar method, or the number of hours worked multiplied by prevailing hourly rates. *See* 370 S.W.3d 757, 758–59 (Tex.2012). The court explained that the lodestar method of calculating attorney's fees involves two steps: (1) the court first determines the reasonable number of hours spent by counsel in the case and a reasonable hourly rate for such work; and (2) the court then multiples the number of such hours by the applicable rate, which yields the lodestar, which may then be adjusted up or down to reach a reasonable fee for the case. *Id.* at 760. The court held that a party seeking attorney's fees when the lodestar method is used "bears the burden of documenting the hours expended on the litigation and the value of those hours." *Id.* at 761.

 ***863** **[11]** Unlike the attorneys in *Olivas*, who presented only their aggregate number of hours spent on the case and

their respective billing rates without further indicating how they spent their time, Schimmel's attorney's fees affidavits stated the date on which work was performed, the number of hours spent, the particular tasks involved, and the applicable billing rate. *See id.* at 763 ("[P]roof [of attorney's fees] should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked."); *see also City of Laredo v. Montano,* 414 S.W.3d 731, 736 (Tex.2013) ("In *El Apple*, we said that a lodestar calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work."). We therefore do not agree with the homeowners that Schimmel's attorney's fees affidavits are insufficient under *Olivas*.

 **[12]** Finally, even if Schimmel's attorney's fees evidence presented with his motion to dismiss were insufficient to establish the reasonableness and necessity of the fee amount, because Schimmel is statutorily entitled to an award of attorney's fees, the appropriate disposition of this case would be to remand the attorney's fees issue back to the trial court for further proceedings. *See Alphonso v. Deshotel,* 417 S.W.3d 194, 202 (Tex.App.-El Paso 2013, no pet.) ("[G]iven that Appellees are entitled to attorney's fees and costs under the [TCPA] because the trial court granted their motion to dismiss and we have upheld that ruling on appeal, the proper disposition in this case is to reverse the award of attorney's fees and costs [which was not supported by an affidavit admitted into evidence] and remand that issue back to the trial court for a new trial."); *see also Uhl v. Uhl,* 524 S.W.2d 534, 538 (Tex.Civ.App.-Fort Worth 1975, no writ) ("When a [party] is clearly entitled to attorney's fees in some amount but where there had been no proof in the trial court of the amount there may be severance of that issue with remand to the trial court for a new trial on that issue.").

We hold that because Schimmel has established his entitlement to dismissal under the TCPA, he is entitled to "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." TEX. CIV. PRAC. & REM.CODE ANN. § 27.009(a)(1); *see also Newspaper Holdings,* 416 S.W.3d at 90 ("We therefore reverse the trial court's denial of the defendants' motions to dismiss, and we remand the case to the trial court for further proceedings as required by the statute and to order dismissal of the suit.").

We sustain Schimmel's second issue.

**Conclusion**

We reverse the trial court's order denying Schimmel's motion to dismiss and remand the case to the trial court for further proceedings relating to Schimmel's attorney's fees, costs, and expenses and to order dismissal of the suit.

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.



# Tex. Civ. Prac. & Rem. Code § 27.001

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 2. TRIAL, JUDGMENT, AND APPEAL > SUBTITLE B. TRIAL MATTERS > CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS**

## § 27.001. Definitions

In this chapter:

**(1)** "Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.

**(2)** "Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.

**(3)** "Exercise of the right of free speech" means a communication made in connection with a matter of public concern.

**(4)** "Exercise of the right to petition" means any of the following:

**(A)** a communication in or pertaining to:

**(i)** a judicial proceeding;

**(ii)** an official proceeding, other than a judicial proceeding, to administer the law;

**(iii)** an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

**(iv)** a legislative proceeding, including a proceeding of a legislative committee;

**(v)** a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

**(vi)** a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

**(vii)** a proceeding of the governing body of any political subdivision of this state;

**(viii)** a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

**(ix)** a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

**(B)** a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

**(C)** a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

**(D)** a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

**(E)** any other communication that falls within the protection of the right to petition government under the

Constitution of the United States or the constitution of this state.

(5) "Governmental proceeding" means a proceeding, other than a judicial proceeding, by an officer, official, or body of this state or a political subdivision of this state, including a board or commission, or by an officer, official, or body of the federal government.

(6) "Legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.

(7) "Matter of public concern" includes an issue related to:

   (A) health or safety;

   (B) environmental, economic, or community well-being;

   (C) the government;

   (D) a public official or public figure; or

   (E) a good, product, or service in the marketplace.

(8) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.

(9) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:

   (A) an officer, employee, or agent of government;

   (B) a juror;

   (C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;

   (D) an attorney or notary public when participating in the performance of a governmental function; or

   (E) a person who is performing a governmental function under a claim of right but is not legally qualified to do so.

## History

Enacted by Acts 2011, 82nd Leg., ch. 341 (H.B. 2973), § 2, effective June 17, 2011.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.



# Tex. Civ. Prac. & Rem. Code § 27.002

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 2. TRIAL, JUDGMENT, AND APPEAL > SUBTITLE B. TRIAL MATTERS > CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS**

## § 27.002. Purpose

The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

## History

Enacted by Acts 2011, 82nd Leg., ch. 341 (H.B. 2973), § 2, effective June 17, 2011.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

 

# Tex. Civ. Prac. & Rem. Code § 27.003

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 2. TRIAL, JUDGMENT, AND APPEAL > SUBTITLE B. TRIAL MATTERS > CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS**

## § 27.003. Motion to Dismiss

**(a)** If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

**(b)** A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action. The court may extend the time to file a motion under this section on a showing of good cause.

**(c)** Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.

## History

Enacted by Acts 2011, 82nd Leg., ch. 341 (H.B. 2973), § 2, effective June 17, 2011.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.



# Tex. Civ. Prac. & Rem. Code § 27.004

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 2. TRIAL, JUDGMENT, AND APPEAL > SUBTITLE B. TRIAL MATTERS > CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS**

## § 27.004. Hearing

**(a)** A hearing on a motion under Section 27.003 must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

**(b)** In the event that the court cannot hold a hearing in the time required by Subsection (a), the court may take judicial notice that the court's docket conditions required a hearing at a later date, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

**(c)** If the court allows discovery under Section 27.006(b), the court may extend the hearing date to allow discovery under that subsection, but in no event shall the hearing occur more than 120 days after the service of the motion under Section 27.003.

## History

Enacted by Acts 2011, 82nd Leg., ch. 341 (H.B. 2973), § 2, effective June 17, 2011; am. Acts 2013, 83rd Leg., ch. 1042 (H.B. 2935), § 1, effective June 14, 2013.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.



# Tex. Civ. Prac. & Rem. Code § 27.005

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 2. TRIAL, JUDGMENT, AND APPEAL > SUBTITLE B. TRIAL MATTERS > CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS**

## § 27.005. Ruling

**(a)** The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

**(b)** Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:

**(1)** the right of free speech;

**(2)** the right to petition; or

**(3)** the right of association.

**(c)** The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.

**(d)** Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.

## History

Enacted by Acts 2011, 82nd Leg., ch. 341 (H.B. 2973), § 2, effective June 17, 2011; am. Acts 2013, 83rd Leg., ch. 1042 (H.B. 2935), § 2, effective June 14, 2013.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.


# Tex. Civ. Prac. & Rem. Code § 27.006

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 2. TRIAL, JUDGMENT, AND APPEAL > SUBTITLE B. TRIAL MATTERS > CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS**

## § 27.006. Evidence

  **(a)** In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

  **(b)** On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion.

## History

Enacted by Acts 2011, 82nd Leg., ch. 341 (H.B. 2973), § 2, effective June 17, 2011.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.